# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

CHRISTINA ACHEY,                              )
on Behalf of Herself and All Others          )
Similarly Situated,                          )        Case No. 1:13-cv-07675
                                             )
              Plaintiff,                     )        Judge Harry D. Leinenweber
       v.                                    )
                                             )
BMO HARRIS BANK, N.A.,                        )
                                             )
              Defendant.                     )
                                             )

## DEFENDANT BMO HARRIS BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

Lucia Nale (IL Bar No. 6201684)
Debra Bogo-Ernst (IL Bar No. 6271962)
Matthew Sostrin (IL Bar No. 6279840)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600 (Telephone)
(312) 701-7711 (Facsimile)
lnale@mayerbrown.com
dernst@mayerbrown.com
msostrin@mayerbrown.com

Kevin Ranlett (*Pro Hac Vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000 (Telephone)
(202) 263-3300 (Facsimile)
kranlett@mayerbrown.com

*Attorneys for BMO Harris Bank N.A.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................. 2

    A. Achey's Arbitration Agreements ......................................................... 2

    B. The Automated Clearing House Network............................................. 4

    C. Achey's Lawsuit ................................................................................... 5

III. ARGUMENT ...................................................................................................... 6

    A. The FAA Requires Enforcement of Achey's Agreements To Arbitrate................ 6

    B. BMO Harris Is Entitled To Enforce The Arbitration Provisions In Achey's Loan Agreements .................................................................. 8

        1. Achey is equitably estopped from denying BMO Harris the right to invoke arbitration ....................................................................... 9

            a. Achey's claims against BMO Harris are intertwined with her loan agreements ...................................................... 9

            b. Achey alleges that BMO Harris and her lender engaged in interdependent and concerted misconduct ................................... 11

        2. BMO Harris may enforce the arbitration provisions as a third-party beneficiary of the loan agreements .......................................... 13

    C. The FAA Requires A Stay Of This Action Pending Arbitration ........................ 15

IV. CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) ....................................................................................................7

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ........................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ................................................................................................6, 7

*Bannett v. Hankin*,
    331 F. Supp. 2d 354 (E.D. Pa. 2004) .......................................................................9, 10

*Brantley v. Republic Mortg. Ins. Co.*,
    424 F.3d 392 (4th Cir. 2005) .......................................................................................11

*Carbajal v. H & R Block Tax Services, Inc.*,
    372 F.3d 903 (7th Cir. 2004) .........................................................................................7

*Clerk v. ACE Cash Express., Inc.*,
    Civ. Action No. 09-5117, 2010 WL 364450 (E.D. Pa. Jan. 29, 2010) ......................12

*Clerk v. First Bank of Del.*,
    735 F. Supp. 2d 170 (E.D. Pa. 2010) ............................................................................8

*Continental Cas. Co. v. Am. Nat'l Ins. Co.*,
    417 F.3d 727 (7th Cir. 2005) .......................................................................................13

*Denney v. BDO Seidman, L.L.P.*,
    412 F.3d 58 (2d Cir. 2005) ...........................................................................................11

*Dodds v. Pulte Home Corp.*,
    909 A.2d 348 (Pa. Super. Ct. 2006) ..................................................................9, 10, 12

*Elwyn v. DeLuca*,
    48 A.3d 457, 463 (Pa. Super. Ct. 2012) ...................................................................9, 10

*Fluke v. Cashcall, Inc.*,
    Civ. Action No. 08-5776, 2009 WL 1437593 (E.D. Pa. May 21, 2009) ...................12

*Gibson v. Wal-Mart Stores, Inc.*,
    181 F.3d 1163 (10th Cir. 1999) ...................................................................................13

**Page(s)**

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)......................................................................................................15

*Grigson v. Creative Artists Agency LLC*,
    210 F.3d 524 (5th Cir. 2000) ..............................................................................11, 12

*Hawthorne v. Fundamental Long Term Care Holdings, LLC*,
    No. 2:12cv1826, 2013 WL 5273218 (W.D. Pa. Sept. 19, 2013) ...........................13

*Highmark Inc. v. Hospital Serv. Ass'n of Ne. Pa.*,
    785 A.2d 93 (Pa. Super. Ct. 2001)....................................................................13, 14

*Holden v. Deloitte & Touche LLP*,
    390 F. Supp. 2d 752 (N.D. Ill. 2005) ....................................................................11

*Miller v. Allstate Ins. Co.*,
    763 A.2d 401 (Pa. Super. Ct. 2000).......................................................................13

*Mori v. East Side Lenders, LLC*,
    No. 11 Civ. 1324, 2011 WL 2518966 (N.D. Ill. June 24, 2011) ........................8, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).....................................................................................................8

*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999) ...............................................................................10

*Pulver v. Tri W. Metals*,
    No. 03 C 9267, 2004 WL 1497807 (N.D. Ill. July 1, 2004) .....................................2

*Sarl v. A.M. Todd Co.*,
    Civil Action No. 07-2727, 2008 WL 724607 (E.D. Pa. Mar. 18, 2008)..................11

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)..................................................................................................7

*Silec Cable S.A.S. v. Alcoa Fjardaal, SF*,
    Civil No. 12–01392, 2012 WL 5906535 (W.D. Pa. Nov. 26, 2012) ........................7

*Snowden v. CheckPoint Check Cashing*,
    290 F.3d 631 (4th Cir. 2002) ...................................................................................8

*Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*,
    85 F.3d 21 (2d Cir. 1996)........................................................................................13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*United States v. Wood*,
 925 F.2d 1580 (7th Cir. 1991) ................................................................2

*Weiner v. Pritzker*,
 No. 2846, 2001 WL 1807929 (Pa. Com. Pl. 2001)................................15

*Wellington v. Westrum Dev. Co.*,
 23 Pa. D. & C. 5th 353 (Pa. Com. Pl. 2011) ..........................................9

## STATUTES AND RULES

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ....................................................1

 9 U.S.C. § 2 ..............................................................................................6

 9 U.S.C. § 3 ............................................................................................15

Fed. R. Civ. P. 12(b)(6)..................................................................................1

Fed. R. Civ. P. 12(b)(7)..................................................................................1

Fed. R. Civ. P. 19...........................................................................................1

## OTHER AUTHORITIES

21 R. LORD, WILLISTON ON CONTRACTS (4th ed. 2001) ...............................8

DOMKE ON COMMERCIAL ARBITRATION (2003)........................................10

Defendant BMO Harris Bank, N.A. ("BMO Harris") respectfully submits this Memorandum in support of its motion to compel arbitration and to stay litigation.[1]

## I.   **INTRODUCTION**

Plaintiff Christina Achey alleges that two loans she entered into with a lender called MNE Services, Inc., which she says is doing is business as AmeriLoan, were illegal, and seeks a refund of her payments to the lender (plus treble damages).  She neglects to mention, however, that her loan agreements require her to arbitrate any dispute relating to those loans, such as her challenges to their validity.  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires her to honor that commitment.

Achey cannot sidestep arbitration by omitting her lender from the complaint and instead suing BMO Harris, which allegedly processed the payments between her and the lender via the Automated Clearing House ("ACH") network, described in Section II.B below.  Those claims are wholly intertwined with and dependent upon the terms of her loans and the alleged wrongdoing of her lender.  The doctrine of equitable estoppel exists to prevent Achey from attempting to litigate around her commitment to arbitrate with the lender by instead suing BMO Harris.

Moreover, Achey's loan agreements expressly authorized the lender to transmit and receive funds to and from Achey's bank account via ACH transfer.  Accordingly, BMO Harris is also entitled to invoke the arbitration clauses as a third-party beneficiary.

BMO Harris therefore respectfully moves this Court for an order compelling Achey to arbitrate her claims and staying this action pending the outcome.

---

[1]   BMO Harris also has filed a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6)-(7) and 19.  But BMO respectfully submits that the Court first should decide the threshold question of whether plaintiff Achey must arbitrate her claims.

## II. BACKGROUND

### A. Achey's Arbitration Agreements

Despite suing in an Illinois court, Achey alleges that she is a Pennsylvania resident who applied for and received two loans from lender "MNE Services, Inc.," doing business as "AmeriLoan." Compl. ¶¶ 11, 13, 70, 74. She first alleges that on or about October 11, 2012, she "applied for and received a payday loan in the amount of $200 from AmeriLoan by completing an application on the www.ameriloan.com website." *Id.* ¶ 70. She further alleges that on or about July 10, 2013, she "applied for and received an additional [$350] payday loan . . . from AmeriLoan . . . ." *Id.* ¶ 74.

Although these two loans form the foundation of her lawsuit, Achey failed to attach the loan documents to her complaint. Nonetheless, because the complaint repeatedly references those documents (*id.* ¶¶ 70-79), they are "incorporated by reference to the pleadings." *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also*, *e.g.*, *Pulver v. Tri W. Metals*, No. 03 C 9267, 2004 WL 1497807, at *1 (N.D. Ill. July 1, 2004). Accordingly, BMO Harris has submitted copies of Achey's loan documents (with her personal information redacted) with this motion. *See* Decl. of Kevin Ranlett Ex. 5 (attaching Decl. of Natalie Dempsey); *see also* Dempsey Decl. Exs. 9-10 (attaching loan documents).

Moreover, the lender's records confirm that Achey entered into the two loan transactions referenced in her complaint. *See* Dempsey Decl. ¶¶ 17-19. According to those records, Achey electronically signed the first loan application and agreement on October 10, 2012 and the second loan application and agreement on July 10, 2013. *Id.* ¶¶ 18-19. For each transaction, Achey clicked on a check box marked "I AGREE" next to an acknowledgment that she accepted the contract terms. For example, the acknowledgment for the 2012 loan stated: "I have read and

accept the terms" of the following: (1) "the <u>Application</u>, including . . . the <u>ARBITRATION PROVISION</u> contained therein;" . . . and (4) the "<u>Loan Note and Disclosure</u>, including the terms and provisions of the <u>LIMITED WAIVER OF SOVEREIGN IMMUNITY</u> and the <u>ARBITRATION PROVISION</u> contained therein." *Id.* ¶ 9.[2] Immediately after completing each transaction, Achey was directed to a confirmation webpage from which she could print copies of those documents. *Id.* ¶¶ 10, 16.

Each of the loan applications and agreements includes a provision—labeled "**<u>ARBITRATION PROVISION</u>**"—that requires Achey to "arbitrate" any "dispute in accordance with the terms of this Arbitration Provision." Dempsey Decl. Ex. 9 at 2, 8; *id.* Ex. 10 at 4, 10. The arbitration provisions specify that "the words 'dispute' and 'disputes' are given the broadest possible meaning and include, without limitation . . . all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Loan Agreement"—including, among other things, "any claim, dispute, or controversy relating to the . . . enforceability . . . of this Loan Agreement," such as "any claim that all or any part of this Loan Agreement . . . is void, voidable, invalid or unenforceable"—as well as "all federal or state law claims arising from or relating directly or indirectly to this Loan Agreement . . . ." *Id.* Ex. 10 at 10; *see also id.* Ex. 9 at 8 (similar). Each provision further states that the customer is agreeing to arbitrate claims against "related third parties," including the lender's "agents, consultants, or servicers," and emphasizes that "**YOU ARE WAIVING YOUR RIGHT TO FILE A**

---

[2] The acknowledgment for the 2013 loan similarly stated: "I have read and accept the terms of the following": (1) the "<u>APPLICATION</u>," which includes an arbitration provision; (2) the "<u>FEDERAL-TRUTH-IN-LENDING STATEMENT</u>"; (3) the "<u>LOAN AGREEMENT</u>," which includes another copy of the arbitration provision; (4) the "ELECTRONIC DISCLOSURE & CONSENT AGREEMENT"; (5) the "PRIVACY POLICY"; and (6) the "ACH AUTHORIZATION AGREEMENT." Dempsey Decl. ¶ 15.

**LAWSUIT . . . AGAINST US OR RELATED THIRD PARTIES**." *Id.* Ex. 10 at 4-5, 10 (emphasis in original); *see also id.* Ex. 9 at 2-3, 8 (similar).[3]

Each arbitration provision designates a major reputable arbitration provider to administer the arbitration provisions. *See id.* Ex. 9 at 2, 8 (American Arbitration Association ("AAA")); *id.* Ex. 10 at 4, 10 (customer may choose between AAA and JAMS); *see also* Ranlett Decl. Exs. 1-4 (attaching applicable arbitral rules). In addition, BMO Harris must "advance [the customer's] portion" of any "Arbitration Fees." Dempsey Decl. Ex. 9 at 2; *see also id.* Ex. 10 at 4.[4] And, unlike in court, the arbitration provisions provide for an award of reasonable attorneys' fees if the customer prevails. *Id.* Ex. 10 at 5, 10; *see also id.* Ex. 9 at 2, 8 (similar).

Finally, each arbitration provision contains a section—labeled "Opting Out of Arbitration Provision"—that describes how a customer may "reject this arbitration provision . . . ." *Id.* Ex. 10 at 5, 11 (capitalization and boldface omitted); *see also id.* Ex. 9 at 3, 9 (similar). To do so, the customer merely must email an opt-out request "within thirty (30) days" after entering into the "loan agreement." *Id.* Ex. 10 at 5, 11 (capitalization and boldface omitted); *see also id.* Ex. 9 at 3, 9 (similar). According to the lender's records, Achey never opted out of her arbitration agreements. *Id.* ¶¶ 22-23.

## B.     The Automated Clearing House Network

As a part of each of her loan agreements, Achey authorized her lender to use the ACH network both to deposit the loan amount in her bank account and to deduct the payoff amount at

---

[3]     Each provision also specifies that arbitration shall be conducted on an individual basis. *Id.* Ex. 10 at 5, 11; *see also id.* Ex. 9 at 3, 9 (similar).

[4]     The AAA and JAMS have affordable, low-cost fee schedules that apply to consumer cases. Ranlett Decl. Ex. 1 at 14; *id.* Ex. 4 at 3. And the arbitration provisions specify that the business will pay the customer's share of all arbitration fees if the customer prevails. Dempsey Decl. Ex. 9 at 2, 8; *id.* Ex. 10 at 5, 10. But to make arbitration even more accessible, BMO Harris agrees to pay Achey's share of arbitration fees regardless who prevails.

the completion of the loan term. Dempsey Decl. Ex. 9 at 7; *id.* Ex. 10 at 8. The ACH network processes enormous volumes of debit and credit transactions. Compl. ¶¶ 27-30. In its most basic form, a transaction on the ACH network starts when an accountholder (such as Achey) authorizes an ACH network transaction with a merchant (such as her lender). *Id.* ¶ 32. The merchant then transmits that authorization to an Originating Depository Financial Institution ("ODFI"), which is any bank that is a member of the ACH network (such as BMO Harris). *Id.* The ODFI, in turn transmits the authorized transaction through the ACH system to the accountholder's bank, which posts the credit or debit to its customer's account. *Id.*

## C. Achey's Lawsuit

On October 25, 2013, Achey filed this putative class action. She alleges that, as she authorized in her loan agreements (Compl. ¶¶ 70, 74), her lender originated debit transactions for her checking account though the ACH network, and that BMO Harris was the ODFI on at least one of these transactions.[5] *Id.* ¶¶ 73, 77-78. Although the basis for her claims is that her loans allegedly were illegal and unenforceable (*e.g.*, *id.* ¶¶ 1-10, 13, 19-26, 83, 94-97, 100-102, 106, 111-121, 123-131, 134), Achey has sued only BMO Harris and not her lender.

Achey seeks to represent a putative multi-state class of people for whom BMO Harris allegedly processed an ACH transaction as OFDI for any out-of-state lender in connection with a loan that purportedly "was illegal under the law of their respective state at the time of the debit." *Id.* ¶ 80. She asserts claims for assumpsit, unjust enrichment, RICO violations, and violations of Pennsylvania's—not Illinois's—civil usury and consumer credit law. *Id.* ¶¶ 87-140. Achey

---

[5] While Achey specifically alleges that BMO Harris was the ODFI for at least one transaction relating to her July 10, 2013 loan (Compl. ¶ 78), she fails to specifically allege that BMO Harris was an ODFI for any transaction relating to her October 11, 2012 loan.

seeks injunctive relief, treble damages, civil penalties, restitution, and attorneys' fees and costs. *Id.* at pp. 31-33.

## III. ARGUMENT

### A. The FAA Requires Enforcement of Achey's Agreements To Arbitrate.

The FAA governs the arbitration provisions in Achey's loan applications and agreements. The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: (i) Achey's arbitration agreements are in writing (*see* Dempsey Decl. Exs. 9-10); and (ii) her online loan contracts between a Pennsylvania resident and a lender based outside of Pennsylvania (*see* Compl. ¶ 13) involve interstate commerce.[6]

Under the FAA, Achey's arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). Thus, section 2 of the FAA embodies a "liberal federal policy favoring arbitration agreements." *Id.* at 1749 (internal quotation marks omitted).

Here, no grounds "exist at law or in equity for the revocation of" (9 U.S.C. § 2) Achey's arbitration agreements. Any contention, for instance, that Achey's arbitration agreements are unenforceable because they require individual arbitration rather than class actions is foreclosed by *Concepcion*'s holding that the FAA preempts state laws "[r]equiring the availability of

---

[6] Moreover, the arbitration provisions themselves specify that they are "governed by the FAA." Dempsey Decl. Ex. 9 at 2, 8; *id.* Ex. 10 at 5, 10.

classwide arbitration" because they "interfere[] with fundamental attributes of arbitration." 131 S. Ct. at 1748; *see also id.* at 1753. And since *Concepcion*, the Court has held that the FAA also requires enforcement of agreements to arbitrate federal statutory claims on an individual basis, absent a "contrary congressional command." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013); *see also id.* at 2309-12. There is no such contrary congressional command here. Indeed, the Supreme Court itself has held that RICO claims are arbitrable. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 242 (1987).

Nor can there be any dispute that Achey's claims are covered by the arbitration provisions in her loan agreements. Those provisions encompass "all federal or state law claims arising from or relating directly and/or indirectly to" the loan agreements. Dempsey Decl. Ex. 9 at 2, 8; *id.* Ex. 10 at 4, 10. As the Seventh Circuit has recognized, "[i]t would be hard to draft a broader [arbitration] clause." *Carbajal v. H & R Block Tax Servs., Inc*., 372 F.3d 903, 905 (7th Cir. 2004). Moreover, "phrases [in an arbitration clause] such as 'arising out of' are given broad construction under [Pennsylvania] law." *Silec Cable S.A.S. v. Alcoa Fjardaal, SF***,** Civil No. 12–01392, 2012 WL 5906535, at \*19 (W.D. Pa. Nov. 26, 2012).

Achey's claims unquestionably "aris[e] from" and "relat[e] directly and/or indirectly to" her loan agreements. Dempsey Decl. Ex. 9 at 2, 8; *id.* Ex. 10 at 4, 10. Those agreements govern the loan transactions about which Achey now complains, and set forth the allegedly usurious interest rates that form the predicate of her claims. *Id.* Ex. 9 at 7-9; *id.* Ex. 10 at 8-11; *see also* Compl. ¶¶ 3, 5, 13, 25, 71-72, 75-76, 83, 94, 100, 106, 113, 124-125, 133-135. It is for precisely this reason that this Court and other courts have recognized that claims premised on a challenge to the interest rate in a loan "relate directly to [the] Loan Agreement" and thus fall within the scope of an agreement to arbitrate claims "'arising from or relating directly or indirectly to the

7

Loan Agreement.'" *Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 188 (E.D. Pa. 2010); *see also*, *e.g.*, *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 636 (4th Cir. 2002) (same); *Mori v. East Side Lenders, LLC*, No. 11 Civ. 1324, 2011 WL 2518966, at *4 (N.D. Ill. June 24, 2011) (same).

Even if there were any doubt as to whether the arbitration provisions cover Achey's claims—and there is none—those doubts must be resolved in favor of arbitration, because, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Accordingly, Achey's claims are fully arbitrable.

## B. BMO Harris Is Entitled To Enforce The Arbitration Provisions In Achey's Loan Agreements.

Achey may not evade enforcement of her agreements to arbitrate disputes concerning her loans by suing BMO Harris rather than her lender. In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), the Supreme Court explained that "[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" a "litigant who was not a party to the relevant arbitration agreement may invoke [the FAA] if the relevant state contract law allows him to enforce the agreement." *Id.* at 631-32 (quoting 21 R. LORD, WILLISTON ON CONTRACTS § 57:19, at 183 (4th ed. 2001)).[7]

---

[7] Achey, who alleges that she is a Pennsylvania resident who received the challenged loans in Pennsylvania (*see* Compl. ¶¶ 124-125), contends that Pennsylvania law governs her claims challenging her loan agreement (*id.* ¶¶ 110-131). As described below, however, under Pennsylvania law BMO Harris is entitled to compel arbitration of her claims.

1.    **Achey is equitably estopped from denying BMO Harris the right to invoke arbitration.**

A nonsignatory to an arbitration agreement may rely on principles of equitable estoppel to compel a signatory to arbitrate a dispute.  At least two such principles apply here.  First, the issues raised in Achey's complaint are sufficiently intertwined with the arbitration agreement she signed to warrant estopping Achey from denying that BMO Harris is entitled to invoke arbitration.  Second, Achey alleges that BMO Harris and her lender, a signatory to the arbitration agreement, purportedly have engaged in substantially interdependent and concerted misconduct.

a.    **Achey's claims against BMO Harris are intertwined with her loan agreements.**

To begin with, the Pennsylvania Superior Court has held that "non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties." *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. Ct. 2006).  This is so because "[a]n arbitration agreement would be of little value if a party could obviate the effect of the agreement merely by finding a way to join another party." *Id.* at 352; *see Elwyn v. DeLuca*, 48 A.3d 457, 463 (Pa. Super. Ct. 2012) (non-signatory may invoke arbitration clause if the claims against it are "inextricably entwined with the Contract"); *Wellington v. Westrum Dev. Co.*, 23 Pa. D. & C. 5th 353 (Pa. Com. Pl. 2011) (similar); *accord*, *e.g.*, *Bannett v. Hankin*, 331 F. Supp. 2d 354, 359 (E.D. Pa. 2004) (plaintiff "is estopped from avoiding arbitration with a nonsignatory when the issues which the nonsignatory wants to resolve are intertwined with the agreement that the signatory signed").  "This theory applies when a signatory . . . must rely on the terms of the agreement to assert its claims against the nonsignatory such that the signatory's claims make reference to or presume the existence of the written agreement, or the signatory's claims arise out of and relate

9

directly to the written agreement." *Bannett*, 331 F. Supp. 2d at 359-60 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), and DOMKE ON COMMERCIAL ARBITRATION § 13.8 (2003)).

The requisite "obvious and close nexus between" BMO Harris "and the contract or the contracting parties" is present here. *Dodds*, 909 A.2d at 351. Indeed, Achey's complaint clearly raises issues "inextricably entwined" with her loan agreement (*Elwyn*, 48 A.3d at 463), because each of her claims arises out of that agreement and relies upon its terms. Specifically, Achey's RICO and RICO conspiracy counts rest on her allegations that her loan agreement creates an allegedly "unlawful debt[]" because the debt is "unenforceable under State or Federal law . . . relating to usury" and was "incurred in connection with the business of lending money at an usurious rate." Compl. ¶¶ 94, 100. Achey's claims that BMO Harris allegedly aided and abetted her lender in committing violations of Pennsylvania's usury and consumer-credit laws and her claim for assumpsit likewise depend on her assertions that the interest rates charged were illegal in Pennsylvania. *Id.* ¶¶ 106, 113, 125. And her claim for unjust enrichment depends on her allegation that the debit entries initiated by BMO Harris purportedly were "in violation of state law" because the underlying loan was usurious. *Id.* ¶ 133.

In addition, BMO Harris's role in processing the repayments of Achey's loans via ACH transfers was set forth in Achey's loan documents. When applying for her loans, Achey provided her banking information to her lender, and, in the loan agreement, authorized the lender to use the ACH network—and thus BMO Harris's services—to debit her bank account in order to repay the loans. Dempsey Decl. Ex. 9 at 10; *id*. Ex. 10 at 12. In fact, Achey gave her authorization in a separately signed and acknowledged document titled "Authorization to Affect ACH Credit and Debit Entries." *Id*. Ex. 9 at 10; *see also id*. Ex 10 at 12 ("Authorization to

Initiate ACH Credit and Debit Entries").  Achey's repeated acknowledgment of the role of the ACH network in processing her loan transactions indicates that she understood—or should be charged with understanding—that any attack on her loan agreement based on the use of the ACH network in connection with that agreement would be just as subject to arbitration as any other challenge to her loan agreements.

### b.    Achey alleges that BMO Harris and her lender engaged in interdependent and concerted misconduct.

Equitable estoppel will also preclude a signatory to an arbitration agreement from avoiding that agreement where the nonsignatory is alleged to have engaged in "substantially interdependent and concerted misconduct" with a signatory.  *Sarl v. A.M. Todd Co.*, Civil Action No. 07-2727, 2008 WL 724607, at *10 (E.D. Pa. Mar. 18, 2008) (quoting *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000)); *accord, e.g.*, *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005); *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005).  As another court in this district has put it, plaintiffs "cannot 'have it both ways' and advance claims alleging concerted misconduct [by non-signatories] with signator[ies] while simultaneously seeking to ignore an arbitration agreement that they have made with the signatory."  *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 765 (N.D. Ill. 2005) (citing *Grigson*, 210 F.3d at 528).

Achey's allegations in her complaint are unfounded.  But it is clear that she has alleged the requisite substantially interdependent and concerted misconduct to justify allowing BMO Harris to invoke arbitration.  For example, Achey alleges that her lender and BMO Harris were both part of the "ACH Enterprise" (*e.g.*, Compl. ¶¶ 89-95) and that BMO Harris "aided and abetted" and "knowingly provided substantial assistance to" her lender's "illegal lending activities" (*id.* ¶¶ 114, 116, 126-127) by processing ACH transfers for Achey's loan payments.

11

She further alleges that "participants in the ACH Enterprise [which, by Achey's account, include both her lender and BMO Harris] preserve close business relationships" (*id.* ¶ 90), and that BMO Harris and her lender (or her lender's agent) have entered into "an Origination Agreement" in order to debit her checking account. *Id.* ¶ 93. By virtue of this relationship, Achey also repeatedly imputes to BMO Harris purported knowledge of her lender's identity and her lender's allegedly unlawful activity. *E.g.*, *id.* ¶¶ 95-97, 101-103, 113-120, 126-131.

Although Achey did not name the lender itself a defendant in the complaint, in setting forth her claims against BMO Harris, she references her lender 69 times (11 times as "AmeriLoan" and 47 times using the term "Illegal Online Payday Lender[]"). The only logical explanation is that Achey came upon the arbitration provision in her loan agreements and avoided naming her lender in an attempt to evade arbitration.[8] Such tactics—naming a nonsignatory to the arbitration provision while carefully avoiding naming the signatory—are precisely what principles of equitable estoppel are designed to prevent. *See Grigson*, 210 F.3d at 528 ("The linchpin for equitable estoppel is equity—fairness. . . . [I]t would be especially inequitable [to deny arbitration] where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant."); *accord Dodds*, 909 A.2d at 350 ("The parties to an agreement cannot attempt to defeat an arbitration clause simply . . . by adding a principal as a defendant who was not a party to the agreement.").

In short, Achey's claims against BMO Harris are intertwined with and entirely dependent on the existence and terms of her loan agreements. Achey entered into those agreements,

---

[8]     Indeed, Achey may be aware that when plaintiffs have brought similar claims against lenders, federal courts have enforced the arbitration provisions in the plaintiffs' loan agreements. *See, e.g.*, *Mori*, 2011 WL 2518966; *Clerk v. ACE Cash Express, Inc.*, Civ. Action No. 09-5117, 2010 WL 364450 (E.D. Pa. Jan. 29, 2010); *Fluke v. Cashcall, Inc.*, Civ. Action No. 08-5776, 2009 WL 1437593 (E.D. Pa. May 21, 2009).

moreover, knowing that the ACH network would be used to process payments on her loans—in fact, she authorized its use for that purpose. Achey also repeatedly alleges that BMO Harris and her lender purportedly have a close business relationship and have conspired to commit misconduct. Achey should therefore not be allowed to evade her obligation to arbitrate disputes concerning her loans through the expedient of suing BMO Harris—which allegedly processed her loan payments—rather than her lender.

### 2. BMO Harris may enforce the arbitration provisions as a third-party beneficiary of the loan agreements.

In the alternative, BMO Harris may enforce the arbitration provision under the third-party beneficiary doctrine. It is well established under Pennsylvania law that a nonsignatory "intended third party beneficiary" of an agreement containing an arbitration clause may enforce the arbitration clause. *Highmark Inc. v. Hosp. Serv. Ass'n of Ne. Pa.*, 785 A.2d 93, 99 (Pa. Super. Ct. 2001); *see also*, *e.g.*, *Hawthorne v. Fundamental Long Term Care Holdings, LLC*, No. 2:12cv1826, 2013 WL 5273218, at *3 (W.D. Pa. Sept. 19, 2013); *Miller v. Allstate Ins. Co.*, 763 A.2d 401, 404 n.1 (Pa. Super. Ct. 2000) ("a third party beneficiary's rights and limitations in a contract are the same as those of the original contracting parties").[9] In Pennsylvania, a party is a third-party beneficiary "when the recognition of the beneficiary's right effectuate[s] the intention of the parties and the circumstances indicate that the promisee intend[ed] to give the beneficiary the benefit of the promised performance." *Highmark*, 785 A.2d at 99 (internal quotation marks omitted).

---

[9]     *Accord*, *e.g.*, *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734-35 (7th Cir. 2005); *Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1170 n.3 (10th Cir. 1999); *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 27 (2d Cir. 1996).

It is clear from the terms of the entire loan agreements that the parties' intent was that BMO Harris have the benefit of the arbitration provision. The loan agreement expressly authorizes Achey's lender to use the ACH network, which necessarily includes an ODFI such as BMO Harris. And Achey's own complaint states that—consistent with this authorization—BMO Harris processed these loan transactions at her lender's behest. Compl. ¶¶ 73, 77. Thus both Achey and her lender contemplated and consented to the involvement of an ODFI such as BMO Harris. And Achey's complaint further alleges that "BMO [Harris] derived a benefit through the receipt of fees for its origination of debit entries on the ACH Network initiated by AmeriLoan [or its agents]." *Id.* ¶ 79. By Achey's own account, then, she and her lender intended in the loan agreement to confer a benefit on BMO Harris by authorizing it to implement ACH transfers requested by the lender. BMO Harris is, in turn, therefore entitled to enforce the arbitration provision contained within that agreement as an intended third-party beneficiary. *See*, *e.g.*, *Highmark*, 785 A.2d at 99

In fact, the arbitration provisions themselves confirm that claims against entities that provide services with respect to the loans—such as BMO Harris's processing of ACH transfers—are subject to arbitration. These provisions specifically require Achey to arbitrate her disputes against related third parties, such as the lender's "agents." Dempsey Decl. Ex. 9 at 8; *id.* Ex. 10 at 10; *see also id.* Ex. 10 at 10 (customer "waiv[es] [his or her] right to file a lawsuit and have a judge or jury resolve any dispute alleged against us or *related third parties*") (capitalization and boldface omitted, italics added). Although BMO Harris in fact is not the lender's agent, Achey is bound by her allegations that BMO Harris was "working on behalf of" and "at the request of" her lender. Compl. ¶¶ 8, 67, 89, 94, 95, 96, 101, 134; *cf. Weiner v. Pritzker*, No. 2846, 2001 WL 1807929, at *2 (Pa. Com. Pl. 2001) ("Having described Pritzker

and DeRusso as agents . . . , Weiner cannot now ignore the ramifications of agency theory and argue that Pritzker and DeRusso are not bound to the arbitration agreement, which their principal . . . entered into with Weiner.").

BMO Harris is therefore entitled to enforce the arbitration provision contained within the loan agreement as an intended third-party beneficiary.

### C.     The FAA Requires A Stay Of This Action Pending Arbitration.

When, as here, an arbitration provision covers a plaintiff's claims, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In other words, section 3 of the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). BMO Harris therefore respectfully requests that this Court enter an order staying this case pending the outcome of any arbitration.

## IV.    CONCLUSION

For all of the reasons set forth above, BMO Harris respectfully requests that the Court compel Achey to arbitrate her claims and stay this litigation.


Date: 12/23/2013                    By __/s/Debra Bogo-Ernst_____
                                         Lucia Nale (IL Bar No. 6201684)
                                         Debra Bogo-Ernst (IL Bar No. 6271962)
                                         Matthew Sostrin (IL Bar No. 6279840)
                                         MAYER BROWN LLP
                                         71 South Wacker Drive
                                         Chicago, IL 60606-4637
                                         (312) 782-0600 (Telephone)
                                         (312) 701-7711 (Facsimile)
                                         lnale@mayerbrown.com
                                         dernst@mayerbrown.com
                                         msostrin@mayerbrown.com

Kevin Ranlett (*Pro Hac Vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000 (Telephone)
(202) 263-3300 (Facsimile)
kranlett@mayerbrown.com

*Attorneys for BMO Harris Bank N.A.*