# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTINA ACHEY, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | |
| | ) | Case No. 13-cv-7675 |
| Plaintiff, | ) ) | |
| | ) | Judge Harry D. Leinenweber |
| v. | ) ) | |
| BMO HARRIS BANK, N.A., | ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Christina Achey respectfully submits the Memorandum Opinion and Order entered by the United States District Court for the Middle District of North Carolina in *James Dillon v. BMO Harris Bank, N.A., et al.*, Case No. 1:13-CV-897, on April 23, 2014, in opposition to all motions filed by Defendant BMO Harris Bank, N.A. ("BMO Harris"), to date. *Dillon* is a similar action in which defendants, including BMO Harris, moved to dismiss plaintiff's claims raising identical arguments as have been advanced here. BMO Harris also moved to transfer premised on the same arguments raised here.[1] The Middle District of North Carolina granted in part and denied in part defendants' motions to dismiss and denied BMO Harris's motion to transfer. A copy of the order is attached as Exhibit A.

---

[1] On March 10, 2014, the Middle District of North Carolina entered an Order denying defendants' motions to compel arbitration.

Dated: April 28, 2014.

Respectfully submitted,

*/s/ Jason H. Alperstein*
Jeffrey M. Ostrow
ostrow@kolawyers.com
Jason H. Alperstein
alperstein@kolawyers.com
**KOPELOWITZ OSTROW P.A.**
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300

**CHITWOOD HARLEY HARNES LLP**
Darren T. Kaplan *(admitted pro hac vice)*
1350 Broadway, Suite 908
New York, NY 10018
Tel: (917) 595-3600
Fax: (404) 876-4476
dkaplan@chitwoodlaw.com

**STUEVE SIEGEL HANSON LLP**
Norman E. Siegel *(admitted pro hac vice)*
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei *(admitted pro hac vice)*
2000 L Street, N.W.
Suite 808
Washington, D.C. 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com

*Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 28th day of April, 2014, a true and correct copy of the foregoing document was served via the Court's CM/ECF system upon all counsel of record.

**KOPELOWITZ OSTROW P.A.**

By: *<u>/s/ Jason H. Alperstein</u>*
    Jason H. Alperstein

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES DILLON,                          )
                                       )
            Plaintiff,                  )
                                       )
      v.                                )              1:13-CV-897
                                       )
BMO HARRIS BANK, N.A., et al.,          )
                                       )
            Defendants.                 )

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on motions to dismiss for failure to join an indispensable party and failure to state a claim filed by defendants BMO Harris Bank, Bay Cities Bank, and Four Oaks Bank & Trust.[1] Defendant Generations Community Federal Credit Union has joined these motions.[2] Also pending are BMO Harris's motion to sever and motion to transfer.[3]

The Court will deny the motions to dismiss for failure to join an indispensable party, the motion to sever, and the motion to transfer. The Court will grant in part and deny in part the motions to dismiss for failure to state a claim. Specifically, the Court will grant the motions to dismiss Mr. Dillon's usury and money had and received claims as to all defendants and will grant the motions to dismiss Mr. Dillon's Consumer Finance Act ("CFA") claim as to defendants BMO Harris, Generations, and Four Oaks. The motion to dismiss the CFA claim will be denied as to defendant Bay Cities. The Court will deny the motions to dismiss as to Mr. Dillon's

---

[1] Docs. 38, 42, 49. The Court previously denied motions to compel arbitration filed by defendants BMO Harris, Bay Cities, and Generations. *See* Doc. 100.

[2] *See* Text Order, April 10, 2014.

[3] Docs. 31, 33.

Racketeer Influenced and Corrupt Organizations Act ("RICO"), Unfair and Deceptive

Trade Practices Act ("UDTPA"), and unjust enrichment claims as to all Defendants.[4]

## BACKGROUND

According to the complaint, plaintiff James Dillon, a North Carolina resident, obtained

five loans over the internet from lenders based offshore or on Indian reservations.[5] The loans

carried interest rates ranging from 139% to over 700% and, in some cases, thousands of dollars

in finance charges.[6] According to Mr. Dillon, these loans violate North Carolina's usury statute

and various other state laws.

Mr. Dillon has not, however, sued these internet lenders. Instead, he has brought suit

against the banks which served as Originating Depository Financial Institutions ("ODFIs") in

connection with transactions related to the loans. To electronically deposit the loan proceeds and

then to debit Mr. Dillon's bank account for repayments, the lenders needed access to the

Automated Clearing House ("ACH") Network.[7] The defendant banks here, in their role as

ODFIs, provided that access by "originating" debits and credits on the ACH Network for the

lenders.[8] NACHA, a non-profit association, oversees the ACH Network and has mandatory rules

---

[4] BMO Harris has filed a "renewed motion" to compel arbitration based on additional evidence and has asked the Court to delay ruling on its motions to dismiss, transfer, and sever, pending a ruling on the "renewed" motion. *See* Docs. 102-04. Generations has filed a similar "renewed motion" based on additional evidence. Doc. 106. Neither party has cited any authority for the proposition that it is entitled to delay proceedings by filing a second motion in order to overcome evidentiary deficiencies in its initial motion. Second, should either party persuade the court that its "renewed" motion should be granted, the Court can take appropriate action, including perhaps vacating this Order as to it. In the meantime, the case should proceed.
[5] Doc. 1 at ¶¶ 5, 11, 81-103.
[6] *Id.* at ¶¶ 84, 88, 92, 96, 99.
[7] *Id.* at ¶ 6.
[8] *Id.*

2

for ODFIs using the ACH Network.[9]  Under NACHA rules, ODFIs must enter into an

origination agreement with the party seeking to access the ACH Network or use a Third-Party

Sender that already has such an agreement.[10]  ODFIs are responsible for all entries they originate

and are required to ensure that entries comply with applicable state and federal laws.[11]  In this

way, ODFIs are the "gatekeepers" of the ACH Network.[12]

Mr. Dillon alleges that the defendant ODFIs knew or should have known that the lenders

were engaged in making payday loans in states where the loans were unlawful and that they

violated RICO by knowingly facilitating the collection of usurious loans through the ACH

Network .  Mr. Dillon also asserts various claims pursuant to North Carolina law.

## ANALYSIS

### I.      Motion to Dismiss for Failure to Join an Indispensable Party

The defendants contend that Mr. Dillon's case must be dismissed because he failed to

join his lenders as party-defendants.  It is the defendants' burden to demonstrate that the lenders

are indispensable parties under Rule 19.[13]  The defendants must show: first, that the lenders are

"required" parties as defined by Rule 19(a); second, that the lenders cannot be joined; and third,

that the action should not, "in equity and good conscience," proceed without the lenders,

considering the factors set forth in Rule 19(b).[14] This burden is a high one, as "[d]ismissal for

---

[9] *Id.* at ¶¶ 40, 46.
[10] *Id.* at ¶ 46.
[11] *Id.* at ¶¶ 48, 55, 58.
[12] *Id.* at ¶ 46.
[13] *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).
[14] Fed. R. Civ. P. 19(a)-(b).

3

non-joinder is a remedy employed extremely reluctantly, 'only when the defect cannot be cured and serious prejudice or inefficiency will result.'"[15]

Under Rule 19(a), a person is a "required party" if one of three factual situations is present.[16] They are:

(1) "in [the] person's absence, the court cannot accord complete relief among existing parties"; or

(2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the  interest"; or

(3) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."[17]

The defendants contend this case falls into all three categories.

Defendants first contend that the Court cannot accord complete relief among the existing parties because two of Mr. Dillon's requests for injunctive relief directly affect the lenders.  Mr. Dillon seeks a "release from any further obligation to make payments" to the lenders[18] and asks the Court to direct each defendant to "immediately credit to all . . . borrowers[] any money it has debited from borrowers' accounts but has not yet remitted to [the lenders]."[19]  At oral argument,

---

[15] *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 517 (M.D.N.C. 2008 (quoting *RPR & Assocs. v. O'Brien/Atkins Assocs.*, 921 F. Supp. 1457, 1463 (M.D.N.C. 1995)).

[16] Fed. R. Civ. P. 19(a).

[17] *Id.*

[18] Doc. 1 at ¶ 187.

[19] *Id.* at ¶ 234.

the defendants also contended that these requests for injunctive relief raised the prospect of multiple or inconsistent obligations on their part.[20] The Court need not decide whether these claims make the lenders required parties under Rule 19(a) because the plaintiff abandoned them at oral argument.[21]

The defendants next contend that the lenders are required parties because they were parties to Mr. Dillon's loan agreements, and any decision rendered in the lenders' absence will impair the lenders' interests in those agreements. It is generally true that "in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."[22] However, this is not an action to set aside a contract or for breach of contract; Mr. Dillon's RICO and UDTPA claims arise under statutory schemes analogous to tort law.[23] The lenders are at most joint tortfeasors or co-conspirators. Neither are necessary parties under Rule 19.[24]

Next, the defendants contend that the lenders' interests will be impaired because Mr. Dillon's "lawsuit challenges . . . his lenders' entire business model."[25] Defendants rely on *Hardy*

---

[20] Doc. 101 at 58-59.

[21] *Id.* at 64.

[22] *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996) (quotation marks omitted).

[23] BMO Harris contends that Mr. Dillon "cannot avoid joining a contracting party by pleading tort claims that nonetheless challenge a contract's validity." Doc. 39 at 13. However, the cases it cites to support this position are distinguishable. In *Ente Nazionale Idrocarburi v. Prudential Sec. Grp., Inc.*, 744 F. Supp. 450, 459-60 (S.D.N.Y. 1990), the plaintiff's tort claims required a determination that the non-party breached the contract. Similarly, in *Kermanshah v. Kermanshah*, No. 08-CV-409(BSJ)(AJP), 2010 WL 1904135, at *5 (S.D.N.Y. May 11, 2010), the court could not decide the tort claims without resolving the underlying breach of contract claim. No such underlying breach of contract claim exists here.

[24] *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (joint tortfeasors); *Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F. Supp. 2d 1131, 1142 (N.D. Okla. 2001) (same); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 284 (4th Cir. 2007) (co-conspirators).

[25] Doc. 43 at 12.

5

*v. IGT, Inc.*[26] for this proposition. *Hardy*, however, was an "action seeking rescission of a contract."[27] The plaintiff sued the manufacturers of electronic bingo machines used in Tribal gaming facilities under an Alabama statute that voids gambling contracts.[28] The plaintiff did not sue the Tribe.[29] The court found that the Tribe was a required party because the action threatened the Tribe's contractual interests with gamblers and the manufacturers—the remedy for the only claim in the case was rescission.[30] The *Hardy* court explicitly distinguished the case from lawsuits involving tort claims.[31] Therefore, *Hardy* supports Mr. Dillon's argument that the lenders here are not required parties to the RICO and UDTPA claims.

It is possible that Mr. Dillon's claim against Bay Cities under the CFA[32] has only rescission as a remedy,[33] which would seem to be in the nature of a contractual remedy, not a tort remedy. However, this particular issue has not been fully briefed by the parties. If the plaintiffs have not withdrawn this aspect of their claim[34] and if Bay Cities later establishes that rescission is the only remedy, the Court can determine at that point how best to deal with this claim.[35]

Defendant Four Oaks also contends that lender White Hills Cash is a required party because Mr. Dillon's case impinges on White Hills Cash's sovereign rights as an arm of a

---

[26] No. 2:10-CV-901-WKW [WO], 2011 WL 3583745 (M.D. Ala. Aug. 15, 2011).

[27] *Id.* at *6.

[28] *Id.* at *3-4.

[29] *Id.* at *4.

[30] *Id.* at *5-6.

[31] *Id.* at *6 (distinguishing *Multimedia Games*, 214 F. Supp. 2d at 1142).

[32] The Court has elsewhere dismissed the CFA claims against the other defendants. *See infra* Part IV(c).

[33] N.C. Gen. Stat. 53-166(d); *see also* discussion *infra* Part IV(c).

[34] *See supra* text accompanying note 21.

[35] *See* Fed. R. Civ. P. 19(b)(2); *see also* 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1608 (3d ed. 2001) ("For example, when rescission . . . might have a detrimental impact on an absent person, money damages may prove to be an appropriate alternative.").

6

federally recognized Indian tribe.[36]  Four Oaks relies on a number of cases for this point, most

notably *Yashenko v. Harrah's NC Casino Co.*[37]  In *Yashenko*, a Tribe contracted Harrah's to run

its gaming enterprise.[38]  Harrah's agreed to "give preference in recruiting, training and

employment to qualified members of the Tribe and their spouses and adult children in all job

categories."[39]  The plaintiff claimed that Harrah's, in enforcing this policy, discriminated on the

basis of race in violation of 42 U.S.C. § 1981.[40]  The plaintiff did not sue the Tribe, and Harrah's

contended that the Tribe was an indispensable party.[41]

      The Fourth Circuit held that the Tribe was a required party under Rule 19(a) for three

reasons.  First, it was impossible to accord complete relief without the Tribe because judgment

against Harrah's alone would not stop the Tribe from enforcing its tribal preference policy,

which was part of the relief the plaintiff requested.[42]  Second, any judgment "would threaten to

impair the Tribe's contractual interests" and its "sovereign capacity to negotiate contracts and . . .

---

[36] Doc. 50 at 4.  Four Oaks was the only defendant who presented evidence concerning the operations of the lender with which it worked and the loan the plaintiff obtained from that lender in connection with the motions to dismiss.  *See* Doc. 51 (affidavit of Michelle Fox, CEO of the tribal company that operates Island Finance, LLC, d/b/a White Hills Cash).  Based on this affidavit, it seems likely that this lender would be entitled to the benefit of sovereign immunity. Mr. Dillon also alleges that Great Plains Lending, LLC, Western Sky Financial, LLC, and MNE Services, Inc. d/b/a USFastCash are tribal entities.  *See* Doc. 1 at ¶ 16.  The other lenders are not alleged to be tribal entities.  *Id.*  Generations and BMO Harris have since filed affidavits from lending officers concerning Mr. Dillon's loans, but the affiants do not discuss any facts related to immunity besides that the lenders are associated with tribes.  *See generally* Docs. 104, 106-1.
[37] 446 F.3d 541 (4th Cir. 2006).
[38] *Id.* at 544.
[39] *Id.* (quotation marks omitted).
[40] *Id.* at 551-52.
[41] *Id.* at 552.
[42] *Id.* at 553.

govern the reservation."[43]  Third, Harrah's might have faced multiple or inconsistent obligations if judgment was rendered in the Tribe's absence.[44]  None of these grounds applies to this case.

As noted above, the Court can give complete relief among the existing parties because Mr. Dillon abandoned his requests for injunctive relief that directly implicated Four Oaks' relationship with White Hills Cash.  Neither Four Oaks nor any other defendant has explained whether or how this litigation might interfere with their contractual relationships with the lenders, beyond their objection to the claims for relief which Mr. Dillon has abandoned.[45] Finally, the defendant/non-party relationship here is quite different from the defendant/non-party relationship in *Yashenko*.  Harrah's was acting on behalf of the non-party Tribe in hiring employees to work in a tribal enterprise on tribal property.[46]  Mr. Dillon does not allege that the defendants were operating the tribal lending business for a non-party Tribe, nor does he allege that the defendants' activities took place on tribal property.  Rather, he alleges that Four Oaks had a knowing and independent role in facilitating illegal loans in North Carolina.  While judgment for Mr. Dillon may affect Four Oaks' willingness to serve as an ODFI for such lenders, it will not prohibit the lenders from lending money or from relying on other mechanisms to

---

[43] *Id.* (internal quotation marks and alterations omitted).
[44] *Id.*
[45] *See Trans Energy, Inc. v. EQT Prod. Co.*, 743 F.3d 895, 902 (4th Cir. 2014) (requiring a party to show that its interests will be harmed in a "tangible way"); *Dore Energy Corp. v. Prospective Inv. & Trading Co.*, 570 F.3d 219, 232 (5th Cir. 2009) ("The factors under Rule 19(b) are concerned with whether *actual harm* to anyone's interests will occur if the case proceeds absent certain parties." (emphasis added)).  While the discussion in these cases relates to the analysis under Rule 19(b), it applies equally to the Rule 19(a) analysis.
[46] *Yashenko*, 446 F.3d at 544.

collect on their loans.[47] *Yashenko* therefore does not compel a finding that the lenders are required parties under Rule 19(a).[48]

The defendants have not met their burden to establish that the lenders are required parties under Rule 19(a) based on the facts alleged in the complaint, as modified by Mr. Dillon's concessions. Therefore, the Court need not address whether the lenders can be joined or, if they cannot, whether the action should proceed without them. Should the circumstances appear otherwise as the factual record is developed, the Court can reconsider the question.[49]

## II. BMO Harris's Motion to Sever or Dismiss

BMO Harris contends that the claims against it should be severed from those against the other defendants because the requirements of Federal Rule of Civil Procedure 20(a)(2) do not allow permissive joinder. Rule 20(a)(2) provides that:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.[50]

"The requirements for permissive joinder are liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive

---

[47] *See* Doc. 51 at ¶ 16 (indicating that Mr. Dillon repaid part of his loan through use of his debit card, which did not involve the ACH network or any ODFIs).

[48] *See generally*, *Multimedia Games*, 214 F. Supp. 2d at 1143 (noting that the sovereign immunity of tribes is "designed to preserve tribal self-governance and independence" and should not be manipulated into "a legalistic loophole to assist non-Indians in the avoidance of civil liability.")

[49] Courts are "free to reconsider a previously decided question of indispensability if there is a showing of changed circumstances." 7 Wright et al., *supra*, § 1609.

[50] Fed. R. Civ. P. 20(a)(2).

9

determination of the action."[51]  One of the goals of Rule 20(a) is to avoid "multiplicity of suits."[52]

Mr. Dillon has not made claims against the four defendants which allege a joint, several, or alternative right to relief.[53]  Thus, he must show that he has a right to relief arising out of a series of transactions or occurrences and that common questions of law or fact will arise.

Mr. Dillon's claims against the banks raise common questions of law.  Among other questions, the nature of the enterprise and knowledge requirements for a RICO claim and whether the benefit required for the unjust enrichment claim can be indirect are common legal questions.  There will also likely be significant common questions of fact related to the way ODFIs and the ACH Network interact.  Mr. Dillon satisfies Rule 20(a)(2)(B)'s "common question" requirements.

Mr. Dillon alleges that he engaged in a series of transactions with the various lenders and that his rights to relief against the defendants arise out of that series of transactions.  On the one hand, each defendant's role is alleged to be the same as the other defendants and to have arisen in exactly the same way.  And each defendant is alleged to have used the same ACH system in the same way as the other defendants, all in a relatively small period of time, harming the same person.  On the other hand, the complaint alleges that each transaction was completely

---

[51] *Maverick Entm't Grp., Inc. v. Does 1-2,115*, 810 F. Supp. 2d 1, 12 (D.D.C. 2011) (internal quotation marks omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

[52] *Rumbaugh v. Winifrede R.R. Co.*, 331 F.2d 530, 537 (4th Cir. 1964); *see also* 7 Wright et al., *supra*, § 1652.

[53] His claim against each bank is based on a different loan, and it is not dependent on or related to the loans he received from the other three banks.  Nor does he allege any grounds by which one bank could be liable for the acts of another bank.

independent.  On balance, considering Rule 20(a)'s purpose and liberal construction, the Court concludes this constitutes a "series of transactions."[54]

The Court has also considered other relevant factors to make its discretionary decision as to whether Mr. Dillon should be allowed to proceed against all defendants in one lawsuit.[55]  It is possible that severance for trial may be appropriate; to the extent each defendant's liability turns in whole or in part on its knowledge of the usurious loans, that factual question is likely to involve different evidence as to each defendant.  However, for pretrial purposes, given the substantial overlap of legal and factual issues, keeping these matters together aids judicial economy.  Therefore, the Court will allow Mr. Dillon to proceed with permissive joinder.  Should it later appear that joinder may be prejudicial to BMO Harris, the Court can consider appropriate protective measures.[56]

## III.    BMO Harris's Motion to Transfer

BMO Harris moves to transfer the case against it to the Eastern District of New York.[57]  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."[58]  As an initial matter, this would only be appropriate if the case against BMO Harris were severed.  As noted *supra*, the Court has decided against severance.  However, because the Court has

---

[54] *See Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 618 (4th Cir. 2001) (upholding joinder of plaintiffs in truth-in-lending claim against lender even though "the factual circumstances of each transaction differed").  The language of Rule 20(a)(1)(A) concerning joinder of plaintiffs and Rule 20(a)(1)(B) concerning joinder of defendants is the same in relevant part.

[55] The Court has also considered the factors relevant to transferring the case against BMO Harris to the Eastern District of New York as part of this determination.  *See infra* Part III.

[56] *See* Fed. R. Civ. P. 20(b) (providing that after permissive joinder, "[t]he court may issue orders . . . to protect a party against . . . prejudice").

[57] Doc. 33 at 1.

[58] 28 U.S.C. § 1404(a).

11

considered the advisability of transfer as part of its determination of whether to let the permissive

joinder proceed,[59] the Court will discuss it.

There are eleven factors relevant to this determination:

(1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of
proof; (3) availability of compulsory process for attendance of unwilling
witnesses, and the cost of obtaining attendance of willing and unwilling
witnesses; (4) possibility of a view of the premises, if appropriate; (5)
enforceability of a judgment, if one is obtained; (6) relative advantage and
obstacles to a fair trial; (7) other practical problems that make a trial easy,
expeditious, and inexpensive; (8) administrative difficulties of court congestion;
(9) local interest in having localized controversies settled at home; (10)
appropriateness in having a trial of a diversity case in a forum that is at home with
the state law that must govern the action; and (11) avoidance of unnecessary
problems with conflicts of laws.[60]

These factors either favor keeping the case in North Carolina or are neutral. Mr. Dillon

selected North Carolina as the forum, North Carolina has an interest in having challenges to its

consumer protection laws settled here, and this Court is familiar with North Carolina law.

Judicial economy also favors keeping the case in North Carolina. If Mr. Dillon's claims against

BMO Harris were transferred to New York, this Court would still be required to deal with the

same issues as to the other defendants. Thus two courts would be required to decide the same

questions.

Nor does the first-filed rule compel transfer. Courts consider three factors in determining

whether the first-filed rule is applicable: "(1) the chronology of the filings, (2) the similarity of

the parties involved, and (3) the similarity of the issues being raised."[61] The *Moss* case was filed

---

[59] *See supra* Part II.
[60] *See Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 527 (M.D.N.C. 1996)
[61] *Remington Arms Co. v. Alliant Techsystems, Inc.*, No. 1:03CV1051, 2004 WL 444574, at
*2 (M.D.N.C. Feb. 25, 2004).

in the Eastern District of New York approximately one week before this case.[62]  The named

plaintiffs are different and, although each action involves Bay Cities and BMO Harris, the other

defendants are different.  Each case involves distinct state law claims.  Finally, unlike many of

the cases following the first-filed rule,[63] the parties here have not filed opposing lawsuits based

on the same underlying facts in different forums.  Although the pending actions here may lead to

inconsistent results at a broad level, there is no prospect of one action holding for BMO Harris as

against Mr. Dillon and another action holding for Mr. Dillon as against BMO Harris.

Considering this and the other factors, the first-filed rule does not compel transferring Mr.

Dillon's case against BMO Harris to the Eastern District of New York.

Because BMO Harris has failed to meet its burden to show that transfer is warranted

under § 1404, its motion to transfer is denied.

## IV.    Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must consider all

well-pled allegations in a complaint as true,[64] and must construe all factual allegations in the

light most favorable to the plaintiff.[65]  The court need not, however, accept unsupported legal

allegations, legal conclusions couched as factual allegations, or conclusory assertions of

wrongdoing unaccompanied by factual enhancement.[66]

---

[62] *Moss v. BMO Harris Bank, N.A.*, Case No. 13-cv-5438 (E.D.N.Y. Sept. 30, 2013).
[63] *See, e.g.*, *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 179 (4th Cir. 1974); *Family Dollar Stores, Inc. v. Overseas Direct Imp. Co.*, Civil Action No. 3:10-cv-278, 2011 WL 148264, at *1-2 (W.D.N.C. Jan. 18, 2011); *Remington Arms*, 2004 WL 444574, at *1.
[64] *Albright v. Oliver*, 510 U.S. 266, 268 (1994).
[65] *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).
[66] *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

13

### a. RICO

Mr. Dillon has alleged RICO claims based on the collection of unlawful debt.  "For RICO claims based on the collection of unlawful debt, the prevailing view is that the plaintiff need not show a pattern of such activity—one act of [unlawful debt] collection is sufficient."[67] There are eight elements to a successful claim under RICO for collection of an unlawful debt:

> (1) there was a RICO enterprise, (2) its activities affected interstate commerce, (3) the individual defendants were employed by or associated with the enterprise, (4) the [defendants] used, in the operation of the enterprise, income derived from the collection of unlawful debt, . . . (5) the individual defendants participated in the conduct of the affairs of the enterprise through collection of unlawful debt. . . within the meaning of RICO, . . . (6) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (7) the debt was incurred in connection with the business of lending money at a usurious rate, and (8) the usurious rate was at least twice the enforceable rate.[68]

It appears there is no mental state requirement "beyond that found in the predicate crimes."[69] Mr. Dillon has adequately alleged each of these elements as to each defendant.  The motions to dismiss this claim will be denied.

### b. Aiding and Abetting Usury under North Carolina Law

Mr. Dillon contends that the defendants violated North Carolina's usury statute by aiding and abetting the lenders' usurious loans.  The usury statute provides that "the parties to a loan [with a principal amount of $25,000 or less] . . . may contract in writing for the payment of interest not in excess of" six percent above the latest noncompetitive rate for U.S. Treasury bills

---

[67] *Day v. DB Capital Grp., LLC*, Civil Action No. DKC 10-1658, 2011 WL 887554, at *12 (D. Md. Mar. 11, 2011) (collecting cases).
[68] *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 248 (2d Cir. 1985) (internal quotation marks and alterations omitted); *Day*, 2011 WL 887554, at *13.
[69] *United States v. Biasucci*, 786 F.2d 504, 514 (2d Cir. 1986).

with a six-month maturity, or sixteen percent, whichever is greater.[70]  A usury claim has four

elements:

> [1] a loan or forbearance of the collection of money, [2] an understanding that the
> money owed will be paid, [3] payment or an agreement to pay interest at a rate
> greater than allowed by law, and [4] the lender's corrupt intent to receive more in
> interest than the legal rate permits for use of the money loaned.[71]

Corrupt intent is shown if the interest rate on the face of the loan is intentionally greater than the

law allows.[72]

Mr. Dillon alleges that he borrowed money from the lenders with interest rates greater

than the law allows and that he repaid that money and interest.  He does not contend that the

defendants loaned him money at usurious rates; rather, he contends that the defendants aided and

abetted the lenders in making and collecting usurious loans.  Although he has not identified a

case or statutory provision that authorizes aiding and abetting liability for usury claims, Mr.

Dillon contends that the Court can find such liability based on the usury statute's purpose and

intent.

It is true that when the language of a statute is ambiguous, courts may look to legislative

purpose and intent to construe it.[73]  "However, when the language of a statute is clear and

without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute,

---

[70] N.C. Gen. Stat. § 24-1.1(a), (c).

[71] *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 279 (4th Cir. 2012) (quoting *Swindell v. Fed. Nat'l Mortg. Ass'n*, 330 N.C. 153, 159, 409 S.E.2d 892, 895 (1991)).

[72] *Swindell*, 330 N.C. at 159, 409 S.E.2d at 895-96.

[73] *Applewood Props., LLC v. New S. Props., LLC*, 366 N.C. 518, 522, 742 S.E.2d 776, 779 (2013).

and judicial construction of legislative intent is not required."[74]  Courts "'presume that the [North Carolina] General Assembly carefully chose each word used in drafting the legislation.'"[75]

The usury statute applies by its terms to "the parties to a loan."[76]  Mr. Dillon does not allege that the defendants were parties to the loan agreements.  Further, in analogous cases, courts have declined to extend usury liability to intermediaries in loan transactions.[77]  In view of the statute's plain language, the Court concludes there is no cause of action for aiding and abetting usury.  The motions should be granted as to this claim.

### c.  The North Carolina Consumer Finance Act

Mr. Dillon contends that the defendants violated the CFA directly and as aiders and abettors.  Three of the defendants contend they are exempt from the provisions of this statute, and all of the defendants contend the complaint fails to state a claim against them.

The CFA exempts many banks and credit unions from its provisions.  Specifically, the statute provides:

> Nothing in this Article shall be construed to apply to any person, firm or corporation doing business under the authority of any law of this State or of the United States relating to banks, trust companies, savings and loan associations, cooperative credit unions, . . . other than persons, firms and corporations engaged in the business of accepting fees for endorsing or otherwise securing loans or contracts for repayment of loans.[78]

---

[74] *Id.* (quotation marks and alterations omitted).

[75] *Id.* at 523 (quoting *Dickson v. Rucho*, 366 N.C. 332, 344, 737 S.E.2d 362, 371 (2013)).

[76] N.C. Gen. Stat. § 24-1.1(a).

[77] *See In re Tetterton*, 379 B.R. 595, 600 (Bankr. E.D.N.C. 2007) (declining to extend usury liability to loan servicer); *Hansen v. Jonas W. Kessing Co.*, 15 N.C. App. 554, 555-56, 190 S.E.2d 407, 409 (1972) (declining to extend usury liability to mortgage broker).

[78] N.C. Gen. Stat. § 53-191.

16

Under a plain reading of this provision, three of the four defendants are exempt from the CFA under the facts alleged by Mr. Dillon: Four Oaks as a North Carolina state-charted bank;[79] BMO Harris as a national banking institution;[80] and Generations as a federal credit union.[81] Bay Cities, which does not contend that it is exempt from the CFA, is alleged to be a Florida state-chartered bank, and therefore does not appear to be exempt under the facts alleged.[82]

Mr. Dillon contends that the defendants are not exempt because they accepted "fees for collecting on contracts for repayment of loans,"[83] relying on the last clause of the exemption. That clause, however, requires the plaintiff to allege that the defendants accepted fees for "endorsing or otherwise securing" the loans or contracts for repayments of loans at issue here. Mr. Dillon does not allege that the defendants endorsed or otherwise secured anything, and therefore this clause does not apply. Section 53-191 exempts BMO Harris, Four Oaks, and Generations from the CFA.

Bay Cities contends that it is not liable for a direct violation of the CFA and that aiding and abetting liability does not exist under the CFA. The CFA prohibits persons from "engag[ing] in the business of lending in amounts of" $15,000 or less without first obtaining a license from the North Carolina Commissioner of Banks.[84] This prohibition extends to "any person who seeks to avoid its application by any device, subterfuge, or pretense whatsoever."[85] Mr. Dillon contends that Bay Cities is directly liable under this evasion provision because it sought to avoid the prohibition by originating debits for the lenders and by providing them with

---

[79] Doc. 1 at ¶ 13.
[80] *Id.* at ¶ 12.
[81] *Id.* at ¶ 14.
[82] *Id.* at ¶ 15.
[83] Doc. 71 at 29.
[84] N.C. Gen. Stat. § 53-166(a).
[85] *Id.* § 53-166(b).

17

access to the ACH Network, which allowed them to operate without a license in North Carolina.[86]  Bay Cities contends that the evasion provision applies only to lenders.[87]

The CFA was amended in 2006 to expand the evasions provision in § 53-166(b).[88]  This was necessary because lenders had attempted to "evade the restrictions of the [CFA] by offering cash advances in the form of instant cash rebates or other guises."[89]  Although courts found some of the schemes unlawful, "new schemes continue to be devised in order to circumvent the lending laws of North Carolina and to avoid regulation by the Commissioner of Banks."[90]  As a result, the General Assembly clarified that "G.S. 53-166(a) should be construed broadly to prohibit illicit lending schemes."[91]  Construing the CFA broadly, consistent with the 2006 amendments, the Court finds that Mr. Dillon states a claim against Bay Cities under the CFA.[92]

The motion to dismiss the CFA claim is granted as to defendants BMO Harris, Four Oaks, and Generations, and denied as to Bay Cities.

### d.  The North Carolina Unfair and Deceptive Trade Practices Act

To establish a claim under UDTPA,[93] Mr. Dillon must show "(1) defendant[s] committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff."[94]  "A practice is unfair when it offends

---

[86] Doc. 65 at 28-29.
[87] Doc. 43 at 26-27.
[88] Act of Aug. 13, 2006, 2006 N.C. Sess. Laws 243.
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] As noted *supra*, the statutory remedy for this claim raises the possibility that the lender is an indispensable party.  This question has not been thoroughly briefed, and as noted its implications can be explored later.
[93] N.C. Gen. Stat. § 75-1.1.
[94] *State ex rel. Cooper v. NCCS Loans, Inc.*, 174 N.C. App. 630, 640, 624 S.E.2d 371, 378 (2005) (quoting *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)).

established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."[95]  Unfair trade practices claims can be based on a violation of public policy "even when fewer than all of the elements of the triggering statute are satisfied."[96]

The Court concludes that Mr. Dillon has stated a claim for relief under this statute.

### e.   Money Had and Received

Mr. Dillon contends that the defendants are liable for the common law claim of money had and received.  "An action for money had and received may be maintained . . . whenever the defendant has money in his hands which belongs to the plaintiff, and which in equity and good conscience he ought to pay to the plaintiff."[97]  "The test is not whether the defendant acquired the money honestly and in good faith, but rather, has he the right to retain it."[98]

Mr. Dillon alleges that the defendants are "no longer in the possession" of the funds,[99] meaning they no longer have the money in their hands.  His complaint is premised on the idea that the defendants are liable for originating transactions that transferred money from his bank account to the lenders, not that the defendants wrongfully took and retained or used his money. Similar to usury, there is no indication that liability for money had and received extends to such intermediaries.

---

[95] *Id.* (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000)) (internal brackets and quotation marks omitted).

[96] Matthew W. Sawchak & Kip D. Nelson, *Defining Unfairness in "Unfair Trade Practices,"* 90 N.C. L. Rev. 2033, 2044-45 (2012) (citing *Gray*, 352 N.C. at 71, 529 S.E.2d at 683).

[97] *Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 211 N.C. App. 252, 259, 712 S.E.2d 670, 676 (2011) (quoting *Allgood v. Wilmington Sav. & Trust Co.*, 242 N.C. 506, 512, 88 S.E.2d 825, 829 (1955)).

[98] *Ridley v. Jim Walter Corp.*, 272 N.C. 673, 677, 158 S.E.2d 869, 872 (1968).

[99] Doc. 1 at ¶ 223.

At oral argument, Mr. Dillon attempted to avoid this problem by contending that because a claim for money had and received is an action at law rather than equity, the defendants could be liable as long as they possessed the money at some point.[100] Mr. Dillon relies on *Great-West Life & Annuity Insurance Co. v. Knudson*,[101] an ERISA case, for this point. In *Great-West*, the Supreme Court distinguished between restitution at law, which does not require asserting "title or right to possession of particular property,"[102] and restitution in equity, where the plaintiff must identify "particular funds or property in the defendant's possession" that, in equity and good conscience, belong to the plaintiff.[103] From this, Mr. Dillon argues that because a claim for money had and received is an action at law, it does not matter that the defendants no longer possess the money.

It is true that in North Carolina a claim for money had and received is an action at law.[104] However, that categorization does not change what is required to state a claim for money had and received. Mr. Dillon must allege that each defendant "has money in [its] hands which belongs to" him, and the Court must determine whether the defendant has a right to *retain* the money.[105] This language cannot be squared with Mr. Dillon's allegations, in which he asserts the defendants authorized the electronic transfer of money from the lenders to him and vice versa. The defendants cannot retain what they do not have. As alleged, Mr. Dillon fails to state a claim for money had and received against the defendants; *Great-West* does not change this result. Therefore, Mr. Dillon's claim for money had and received is dismissed.

---

[100] Doc. 101 at 110-11.
[101] 534 U.S. 204 (2002).
[102] *Id.* at 213.
[103] *Id.*
[104] *See Wilson v. Lee*, 211 N.C. 434, 434, 190 S.E. 742, 743 (1937).
[105] *See Primerica*, 211 N.C. App. at 259, 712 S.E.2d at 676.

####    f.   Unjust Enrichment

To state a claim for unjust enrichment under North Carolina law, Mr. Dillon must allege that "(1) [he] conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit."[106]  The Court concludes that Mr. Dillon has stated a claim for unjust enrichment.

## CONCLUSION

For the reasons stated herein, the Court will deny BMO Harris's motion to sever[107] and BMO Harris's motion to transfer.[108]  The Court will grant in part and deny in part the motions to dismiss for failure to join an indispensable party and for failure to state a claim.[109]  Specifically, the Court will deny the motions to dismiss for failure to join an indispensable party.  The Court will grant the motions to dismiss Mr. Dillon's usury and money had and received claims as to all defendants.  The Court will deny the motions to dismiss Mr. Dillon's RICO, UDTPA, and Unjust Enrichment claims as to all defendants.  Finally, the Court will grant the motions to dismiss Mr. Dillon's CFA claim as to defendants BMO Harris, Generations, and Four Oaks, and deny it as to defendant Bay Cities.

**SO ORDERED,** this the 23rd day of April, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[106] *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 F. App'x 916, 920 (4th Cir. 2003) (citing *Booe v. Shadrick*, 322 N.C. 567, 568, 369 S.E.2d 554, 555-56 (1988)).
[107] Doc. 31.
[108] Doc. 33.
[109] Docs. 38, 42, 49.