# EXHIBIT A

**PRIORITY SEND**
**JS-6 - Stayed**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  EDCV 14-00627-VAP (DTBx)                                Date:  July 9, 2014

Title:  CHRISTINA AND JOHN LABAJO, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED -v- FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK

===============================================================
PRESENT:  HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

| Marva Dillard | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS:  MINUTE ORDER (1) GRANTING MOTIONS TO COMPEL ARBITRATION (DOC. NOS. 25, 26); AND (2) VACATING JULY 14, 2014 HEARING  (IN CHAMBERS)

   Before the Court are two separate Motions to Compel Arbitration (Doc. Nos. 25, 26) (collectively, "Motions") filed by Mutual of Omaha Bank ("Omaha") and Defendants First International Bank and Trust ("First International") (collectively, "Defendants").  The Motions are appropriate for resolution without a hearing, and accordingly, the Court VACATES the July 14, 2014 hearing on these Motions.  See Fed. R. Civ. P. 78; Local R. 7-15.  After consideration of the papers in support of, and in opposition to, the Motions, the Court GRANTS the Motions.

**I. PROCEDURAL BACKGROUND**

| MINUTES FORM 11 | Initials of Deputy Clerk ___md___ |
|---|---|
| CIVIL -- GEN | Page 1 |

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

    Plaintiffs Christina and John Labajo ("Plaintiffs") filed this class action against Defendants on March 31, 2014, asserting claims of violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), California's usury laws, and the unlawful and unfair prongs of California's Unfair Competition Law, assumpsit, and unjust enrichment.  (See Complaint (Doc. No. 1) at ¶¶ 141-214.)  Plaintiffs seek, inter alia, permanent injunctive relief, restitution, and disgorgement of Defendants' profits.  (Id. at 57-59.)

    On March 23, 2014, Omaha filed its Motion to Compel Arbitration (Doc. No. 25) ("Omaha Mot."), with a Declaration of Wes Summa (Doc. No. 25-1) ("Summa Decl.") and exhibits therein.  Plaintiffs filed their opposition to the Omaha Motion (Doc. No. 30) ("Opp'n to Omaha Mot.") on June 10, 2014, with a Declaration of Jason Hartley (Doc. No. 30-1), with four exhibits.  Omaha filed its reply (Doc. No. 32) ("Omaha Reply") on June 20, 2014.

    Also on March 23, 2014, First International filed its Motion to Compel Arbitration (Doc. No. 26) ("First Int'l Mot."), with a Memorandum in Support of the Motion (Doc. No. 26-1) ("First Int'l Mem."), a Declaration of Rita F. Lin (Doc. No. 26-2) ("Lin Decl."), a Declaration of Natalie C. Dempsey ("Dempsey Decl."), with six exhibits (Lin Decl. Exs. 1-6).  On June 10, 2014, Plaintiffs filed an opposition to the First International Motion (Doc. No. 29) ("Opp'n to FIM"), with a Declaration of Jason Hartley (Doc. No. 29-1), with four exhibits.  First International filed a reply (Doc. No. 31) ("First Int'l Reply") on June 20, 2014.

## II.  FACTUAL BACKGROUND

On January 27, 2012,[1] Plaintiff John Labajo ("Mr. Labajo") applied for and received a $300.00 loan from Sandpoint Capital, LLC ("Sandpoint"), an entity that maintains a payday loan business out of Charleston, Nevis, West Indies.  (Compl.

---

[1] In the Complaint, Plaintiffs indicate all the events connected to Mr. Labajo's loan from Sandpoint as having occurred in 2013 (beginning on January 30, 2013), but the copy of Mr. Labajo's loan application and agreement with Sandpoint, submitted by Omaha, indicates the events occurred in 2012 (beginning on January 27, 2012).  (See Summa Decl. Ex. A.)  For the purpose of the Motions, the Court accepts the dates found in Omaha's submitted copy of the loan application and agreement as accurate.

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

¶¶ 17, 128.)  As part of the application process, Mr. Labajo signed an application and a loan agreement ("Sandpoint Agreement"), which authorized Sandpoint to "initiate," i.e., make a request to, credit and debit entries from Plaintiffs' joint checking account with Wells Fargo Bank in order to repay the loan.  (Id. ¶¶ 6-10, 128; Summa Decl. Ex. A at 7-10.)  The interest rate on the loan was 30 percent; the entirety of the loan with interest, which equaled $390.00, was due on February 10, 2012, eleven days from January 30, 2012, the expected date of the disbursement of the loan – making the annual interest rate on the loan 995.45 percent.  (Compl. ¶¶ 130-31; Summa Decl. Ex. A at 9-10.)  The Sandpoint Agreement included an arbitration provision ("Sandpoint Provision").  (Summa Decl. Ex. A at 7, 9.)  On February 10, 2012, Sandpoint initiated a debit transaction of $90.00 for Plaintiffs' joint checking account at Wells Fargo Bank through the use of the Automatic Clearing House network ("ACH Network"); Omaha, as an "originating depository financial institution" ("ODFI") acting under its written contract with Sandpoint, originated, i.e., granted initiation request for, the debit entry into the ACH Network; Well Fargo received the debit entry and debited $90 from Plaintiffs' checking account.  (Compl. ¶¶ 8-11, 132.)

On June 13, 2013, Mr. Labajo applied for and received an $800.00 loan from MNE Services, Inc. ("MNE"), an entity that is owned by the Miami Tribe of Oklahoma and maintains www.usfastcash.com, a lending website.  (Id. ¶¶ 17, 123.)  As part of the application process, Mr. Labajo signed an electronic loan application and loan agreement ("MNE Agreement"), which authorized MNE to debit Plaintiffs' joint checking account with Wells Fargo Bank in order to repay the loan.  (Id. ¶ 123; Dempsey Decl. Exs. 2, 4, 6, 8, 10.)  The interest rate on the loan was 30 percent; the entirety of the loan with interest, which equaled $1,040.00, was due on June 28, 2013, fifteen days from the date of the loan – making the annual interest rate on the loan 730 percent.  (Compl. ¶¶ 125-26; Dempsey Decl. Ex. 10 at 50, 51.)  The MNE Agreement included an arbitration provision ("MNE Provision").  (Dempsey Decl. Ex. 10 at 47-48, 53-54.)  On June 28, 2013, MNE initiated a debit transaction of $240.00 for Plaintiffs' joint checking account at Wells Fargo Bank through the use of the ACH Network; First International, as an ODFI acting under to its written contract with MNE, originated the debit entry into the ACH Network; and Well Fargo received the debit entry and debited $240 from Plaintiffs' checking account.  (Compl. ¶ 127; Dempsey Decl. Ex. 10 at 51, 55.)

**EDCV 13-01861-VAP (DTBx)**
**CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK**
**MINUTE ORDER of July 9, 2014**

    On June 23, 2013, Plaintiff Christina Labajo ("Ms. Labajo") applied for and received a $600.00 loan from SFS, Inc. ("SFS"), an entity that maintains www.oneclickcash.com, a lending website, out of Niobrara, Nebraska. (Compl. ¶¶ 17, 118.) As part of the application process, Ms. Labajo signed an electronic loan application and loan agreement ("SFS Agreement"), which authorized SFS to debit Plaintiffs' joint checking account with Wells Fargo Bank in order to repay the loan. (Id. ¶ 118; Dempsey Decl. Ex. 1, 3, 5, 7, 9.) The interest rate on the loan was 30 percent; the entirety of the loan with interest, which equaled $780.00, was due on July 5, 2013, twelve days from the date of the loan – making the annual interest rate on the loan 912.50 percent. (Compl. ¶¶ 120-21; Dempsey Decl. Ex. 9 at 33, 34.) The SFS Agreement included an arbitration provision ("SFS Provision"). (Dempsey Decl. Ex. 9 at 30-31, 36-37.) On July 19, 2013, SFS initiated a debit transaction of $180.00 for Plaintiffs' joint checking account at Wells Fargo Bank through the use of the ACH Network; First International, as an ODFI acting under to its written contract with SFS, originated the debit entry into the ACH Network; and Well Fargo received the debit entry and debited $180 from Plaintiffs' checking account. (Compl.¶ 122.)

> The Sandpoint Provision contains the following statements:
> You [Mr. Labajo] and we [Sandpoint] agree that any and all claims, disputes or controversies between you and us, any claim by either of us against the other (or the employees, officers, directors, agents, servicers or assigns of the other) and any claim arising from or relating to your application for this loan, regarding this loan . . ., this Note, this agreement to arbitrate all disputes, . . ., regarding collection of the loan, . . ., including disputes regarding the matters subject to arbitration, . . ., shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure or the National Arbitration Forum ("NAF") in effect at the time the claim is filed. . . . All disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. . . . This agreement to arbitrate all disputes shall apply no matter by whom or against whom the claim is filed. . . . This arbitration agreement is made pursuant to a transaction involving interstate commerce. It shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

(Summa Decl. Ex. A at 7, 9.)

**EDCV 13-01861-VAP (DTBx)**
**CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK**
**MINUTE ORDER of July 9, 2014**

The MNE Provision and the SFS Provision (collectively, "MNE/SFS Provision"), are identical to each other. The MNE/SFS Provision states, in pertinent parts, as follows:

> If any dispute arises that We [MNE or SFS, separately in respective documents] cannot resolve to your satisfaction, You [Mr. Labajo or Ms. Labajo, separately in respective documents] and We hereby agree that we shall arbitrate that dispute in accordance with the terms of this Arbitration Provision, absent You notifying Us of your intent to opt out of this Arbitration Provision as described below.
>
> . . .
>
> As used herein, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation and whether past, present or future: (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Loan Agreement, including the validity and scope of this Arbitration Provision, or any claim, dispute, or controversy relating to the interpretation, applicability, enforceability or formation of this Loan Agreement, including, but not limited to any claim that all or any part of this Loan Agreement or this Arbitration Provision is void, voidable, invalid or unenforceable; (b) all federal or state law claims arising from or relating directly or indirectly to this Loan Agreement, the information You gave Us as part of this Loan Agreement, and/or any past agreement or agreements between You and Us; . . . (g) all claims asserted by You individually against Us, and/or any of our agents, consultants, or servicers and/or any of their employees, directors, officers, shareholders, managers, members, parents, subsidiaries, or any affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief . . . .
>
> . . .
>
> The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") and applicable statutes of

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

> limitation, and shall honor claims of privilege recognized at law.
>
> . . .
>
> You and We expressly acknowledge and agree that this Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA.
>
> . . .
>
> This Arbitration Provision is binding upon and benefits Us, our successors and assigns, and related third parties.
>
> . . .
>
> YOU (BUT NOT WE) HAVE THE SOLE RIGHT TO REJECT THIS ARBITRATION PROVISION AS A MEANS OF RESOLVING DISPUTES WITH US AT ANY TIME WITHIN THIRTY (30) DAYS FOLLOWING YOUR ELECTRONIC SIGNATURE ON ANY LOAN AGREEMENT.

(Dempsey Decl. Ex. 9 at 30-31, 36-37; Ex. 10 at 47-48, 53-54.)

### III. DISCUSSION

**A. FAA**

The FAA "was enacted . . . in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (citation omitted). It governs arbitration agreements in contracts involving transactions in interstate commerce. See 9 U.S.C. § 1; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). Section 2 of the FAA states: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." Concepcion, 131 S. Ct. at 1745 (citation and

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

internal quotation marks omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Id. at 1745-46 (citations omitted).

"Because the FAA mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (citation and internal quotation marks omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91-92 (2000).

Here, the parties are in dispute as to whether the Sandpoint Agreement, the MNE Agreement, and the SFS Agreement (collectively, "Agreements"), which contain the Sandpoint Provision and the MNE/SFS Provision (collectively, "Arbitration Provisions"), constitute valid agreements to arbitrate and, if they do, whether the Arbitration Provisions encompass the disputes at issue – i.e., Plaintiffs' claims against Omaha, and Plaintiffs' claims against First International. The Court thus examines these two questions below.

**B.  Validity of the Arbitration Provisions**
   **(1)   Defendants' Arguments**

Omaha provides a copy of the Sandpoint Agreement electronically signed and submitted by Mr. Labajo, and asserts the Sandpoint Provision within that document was a valid agreement to arbitrate. (Omaha Mot. at 8-9; Summa Decl. Ex. A.) Omaha argues the Sandpoint Agreement and the Sandpoint Provision are valid documents because they were signed by Mr. Labajo on January 27, 2012 at two stages in the online loan process – first when he signed the loan application, then when he signed the loan agreement – acknowledging that he had read and agreed to all of the terms therein, including to arbitrate "any claim by [Mr. Labajo] against [Sandpoint] (or the employees, officers, directors, agents, servicers, or assigns of

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

[Sandpoint]). . . ."  (Omaha Mot. at 9-11; Summa Decl. Ex. A at 7, 9.)  Omaha argues the Sandpoint Provision also is valid because it "is made pursuant to a transaction involving interstate commerce," and is placed properly under the purview of the FAA to arbitrate "any and all claims, disputes or controversies . . . ." (Omaha Mot. at 6-9; Summa Decl. Ex. A. at 6, 8.)  Omaha further argues the Sandpoint Provision is valid because "Mr. Labajo . . . accepted the arbitration agreement by accepting and receiving the benefits thereunder," <u>i.e.</u>, receiving the $300.00 loan from Sandpoint.  (Omaha Mot. at 9 (citing Compl. ¶¶ 128, 132).)

  Similarly, First International submits copies of the MNE Agreement and the SFS Agreement (collectively, "MNE/SFS Agreements"), which were electronically signed and submitted by Mr. Labajo and Ms. Labajo, respectively, and asserts the MNE Provision and the SFS Provision constitute valid agreements to arbitrate.  (First Int'l Mem. at 10-12; Dempsey Decl. Exs. 9, 10.)  First International argues the MNE/SFS Agreements as well as the MNE/SFS Provision are valid documents because they were signed by Mr. Labajo and Ms. Labajo on June 13, 2013 and June 23, 2013, respectively, over two stages in the online loan process – first when each signed the loan application, then when each signed the loan agreement – acknowledging that they had read and agreed to all of the terms therein, including to arbitrate "all claims, disputes or controversies arising from or relating directly or indirectly" to Plaintiffs' loans, including all "third party claims" asserted against "any of [MNE's or SFS's] agents, consultants, or servicers.  (First Int'l Mem. at 11-13; Dempsey Decl. Exs. 9, 10.)  First International further argues the MNE/SFS Provision is valid because "Plaintiffs accepted the agreement by accepting the loan proceeds in the amount of $800 (John Labajo) and $600 (Christina Labajo)." (First Int'l Mem. at 12; Dempsey Decl. Exs. 9, 10).)  Moreover, First International asserts "Plaintiffs also had the opportunity to opt out of the arbitration by simply sending written notice within thirty days of signing the Loan Agreement, but chose not to do so."  (First Int'l Mem. at 11-12; Dempsey Decl. Exs. 9, 10).)

  **(2) Plaintiffs' Argument**
  In their Oppositions to the Motions brought by Omaha and First International, Plaintiffs indicate they "do not challenge the validity and scope of the arbitration provision[s]," or the language of the Arbitration Provisions setting forth "the agreement to arbitrate all dispute."  (<u>See </u>Opp'n to Omaha Mot. at 7; Opp'n to FIM

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

at 7.) Plaintiffs assert they challenge only whether Defendants have the right to enforce the Arbitration Provisions.

### (3) Analysis

The Court finds the Arbitration Provisions are valid arbitration agreements. As Defendants assert and Plaintiffs acknowledge, Plaintiffs signed the Agreements, gave concurrent assent to the clearly delineated Arbitration Provisions within the Agreements, and accepted the loans. Plaintiffs could have opted out of the MNE/SFS Provision, but they did not. Nothing in the formation and the wording of the Arbitration Provisions suggest they are invalid.

At the same time, although Plaintiffs do not raise the issue, the Court is mindful that each of Plaintiffs' claims in the Complaint is based on the assertion that the Agreements are facially illegal. As it relates to the merits of this action, the Court reserves judgment on the issue of the legality of the contracts. See Zurich Am. Ins. Co. v. Watts Indus., Inc., 466 F.3d 577, 581 (7th Cir. 2006) (citing AT&T Techs., Inc. v. Comm'cns Workers of Am., 475 U.S. 643, 649 (1986)) ("In determining a request to compel arbitration, the court's duty is to determine whether the parties' grievance belongs in arbitration, not rule on the potential merits of the underlying dispute between the parties."). Even if the Court were to assume for the purpose of the Motions that the underlying contracts are illegal, the Court finds the Supreme Court's holding in Buckeye would apply here – that a court may enforce a valid arbitration clause within a contract that is purported to be facially illegal. Buckeye, 546 U.S. at 449 (holding that, pursuant to a valid arbitration provision, an arbitrator, not a court, should adjudicate on a claim that an allegedly usurious contract containing the arbitration provision was void due to illegality). Although Buckeye was a case between two contract signatories, the arbitration provision at issue in that case also applied to "third-parties involved" who could "choose to have . . . dispute[s] resolved by binding arbitration . . . ." Buckeye, 546 U.S. at 442 (quoting the "Deferred Deposit and Disclosure Agreement" at issue in that case). There is no indication that the Supreme Court intended its ruling in Buckeye to apply only to signatories and not to third parties explicitly covered in the arbitration provision. Finding the Arbitration Provisions to be valid, even if the Agreements ultimately are found to be illegal, the Court finds the determination on the legality of the Agreements to be in the proper domain of an arbitrator.

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

## C. Disputes at Issue

### (1) Defendants' Arguments

Defendants assert they can enforce the Arbitration Provisions because Defendants are third-party beneficiaries of the Agreements as servicers of the lenders who signed the Agreements, Defendants are agents of the lenders, and Plaintiffs' claims concern, inter alia, the applicability and enforceability of the Agreements, which are subject to the Arbitration Provisions. (Omaha Mot. at 12-20; First Int'l Mem. at 13-20.) Moreover, Defendants argue Plaintiffs are equitably estopped from evading arbitration because Plaintiffs' claims against Defendants are inextricably intertwined with the Agreements, and Defendants share a close relationship with the lenders and are engaged in "concerted misconduct" with the lenders who signed the Agreements with Plaintiffs. (Omaha Mot. at 20-24; First Int'l Mem. at 21-25.)

### (2) Plaintiffs' Arguments

Plaintiffs argue Defendants cannot enforce the Arbitration Provisions because it is not clear that the signatories to the Agreements intended to designate Defendants as third-party beneficiaries. (Opp'n to Omaha Mot. at 8-11; Opp'n to FIM at 8-12.) Plaintiffs also argue Defendants cannot show they are agents of the lenders, covered by the Arbitration Provisions, as the lenders never exercised any control over Defendants. (Opp'n to Omaha Mot. at 11-15; Opp'n to FIM at 12-16.) Plaintiffs further argue Defendants cannot enforce the Arbitration Provisions under the equitable estoppel doctrine because Defendants have not established that the laws of Nevis (which govern the Sandpoint Agreement), the laws of the Miami Tribe of Oklahoma (which govern the MNE Agreement), and the laws of Santee Sioux Nation of Nebraska (which govern the SFS Agreement) permit use of the doctrine to enforce a contract on third parties. (Opp'n to Omaha Mot. at 15; Opp'n to FIM at 16.)

If California law applies in this case, Plaintiffs assert Defendants fail to establish the applicability of the equitable estoppel doctrine because (1) Plaintiffs' claims, rather than arising from the Agreements, "are largely statute-based and do not relate to an action or remedy for breach of the underlying Loan Agreement[s]," and thus are not intertwined with the Agreements; and (2) Defendants fail to

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

establish that the misconduct Plaintiffs accuse Defendants of committing is not "'founded in or intimately connected with the obligations'" of the Agreements. (Opp'n to Omaha Mot. at 15-24 (quoting Murphy v. DirecTV, Inc., 724 F.3d 1218, 1232 (9th Cir. 2013)); Opp'n to FIM at 16-24 (quoting Murphy, 724 F.3d at 1232).) Finally, Plaintiffs argue that even if Defendants can satisfy the two prongs of the equitable estoppel doctrine, the doctrine cannot apply here because Defendants have "unclean hands" from participating in manifestly illegal collection of debts. (Opp'n to Omaha Mot. at 24-25; Opp'n to FIM at 25.)

### (3) Analysis

The Court finds the Arbitration Provisions encompass the disputes at issue in this action. The Court finds that although Defendants are neither named third-party beneficiaries, nor signatories to the Agreements, they are agents of the lenders, and intended third-party beneficiaries as servicers and agents of the lenders. The Court also finds Plaintiffs' claims against Defendants arise from and relate to the Agreements.

#### (a) Sandpoint Agreement

In Mr. Labajo's loan agreement with Sandpoint, the Sandpoint Provision expressly provides that claims asserted against any of Sandpoint's "agents, servicers, or assigns" may enforce arbitration against Mr. Labajo. (Summa Decl. Ex. A at 7, 9.) The Sandpoint Agreement then specifically authorizes Sandpoint and/or its "servicer, agent, or affiliate to initiate one or more ACH debit entries . . . to [Mr. Labajo's] Deposit Account," i.e., Plaintiffs' Well Fargo Bank account. (Id. at 10.) As Plaintiffs allege, "[o]n or about February 10, 2013, Sandpoint [initiated] a debit transaction of $90.00 for Plaintiffs' joint checking account in California through the ACH Network. Mutual of Omaha, pursuant to its written contract with Sandpoint . . ., then 'originated' that debit entry into the ACH Network where it was received by Plaintiffs' bank and debited from Plaintiffs' joint checking account." (Compl. ¶ 132.) Although the term "originator" or "ODFI" is not explicitly included in the Sandpoint Agreement as third-party beneficiaries, Plaintiffs explicitly authorized Sandpoint's "servicer, agent, or affiliate" to conduct ACH debit entries to Plaintiffs' joint bank account at Wells Fargo, and the Court finds Omaha, which provided an indispensable link between Sandpoint and Wells Fargo, was a clearly contemplated third-party beneficiary, either as a servicer or an agent, of the Sandpoint Agreement.

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

See Garcia v. Stonehenge, Ltd., No. C-97-4368, 1998 WL 118177, at *4 (N.D. Cal. Mar. 2, 1998); see also Momot v. Mastro, 652 F.3d 982, 988-89 (9th Cir. 2011) (requiring clear and unmistakable evidence of the parties' intent to delegate issues to an arbitrator); Brinton v. Bankers Pension Servs., Inc., 76 Cal. App. 4th 550, 558 (1999) (a third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears from the terms of the agreement).

     As Omaha points out in its Reply, Plaintiffs impermissibly seek to employ a definition of "servicer" found under the Real Estate Settlement Procedures Act ("RESPA") (which the Truth-in-Lending Act ("TILA") adopts) to argue that Omaha did not function as a "servicer" for Sandpoint. (Omaha Reply at 5-6 n.5 (citing Opp'n to Omaha Mot. at 9-10).) The Sandpoint Agreement bears no indication that it intends to adopt RESPA or TILA's specialized definition of "servicer." In the absence of such an intent, "the ordinary meaning of the term 'servicer' encompasses the services provided by" Omaha, which "serviced" Mr. Labajo's account with Sandpoint when Omaha initiated an ACH debit entry on February 10, 2013 in order to collect on behalf of Sandpoint. (Id.) See Hornicek v. Cardworks Servicing, LLC, Civil Action No. 10-3631, 2011 WL 2623274, at *3 (E.D. Pa. June 29, 2011) (defendant, a non-signatory to the arbitration agreement, could compel arbitration because it was a "servicer" based on the plain meaning of the term). As Omaha acted as a servicer "on behalf of," "at the request of," upon initiation by, and, as the Complaint alleges, in active and knowing participation as a coconspirator with Sandpoint, the Court finds Omaha also was in an agency relationship with Sandpoint – a relationship in which Sandpoint clearly controlled Omaha's actions as to the debiting of Plaintiffs' bank account. (See Compl. ¶¶ 6-11, 132, 166-68, 171-73, 177-84; Omaha Mot. at 14-17; Omaha Reply at 5-7.) See also Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.10 (9th Cir. 2006) ("[C]ontract and agency principles continue to bind nonsignatories to arbitration agreements."); Elder v. BMO Harris Bank, No. JFM-13-3043, 2014 WL 1429334, at *1, n.4 (D. Md. Apr. 11, 2014) (finding that the defendant ODFI banks acted as the payday lenders' agents, in light of "a well-established principle that co-conspirators are agents of one another"); Johnson & Johnson v. Azam Int'l Trading, No. 07-cv-4302 (SLT) (SMG), 2013 WL 4048295, at *7 (E.D.N.Y. Aug. 9, 2013) (quoting Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y.1991) ("'[c]ourts have defined 'agent'

broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators.'"); Laster v. T-Mobile USA, Inc., No. 05cv1167, 2013 WL 4082682, at *5 (S.D. Cal. Jul. 19, 2013); Reddam v. KPMG LLP, No. SA CV 04-1227-GLT, 2004 WL 3761875, at *4 (C.D. Cal. Dec. 14, 2004). As the court in the Eastern District of New York recently found in a similar case involving payday loan borrowers suing ODFI banks under RICO for allegedly illegal loans, Omaha "is implicitly described" in the Sandpoint Agreement as a "servicer" or an "agent," as it "performed a crucial function with respect to the loans, which was referred to in the authorizations for funds transfers." Moss v. BMO Harris Bank, N.A., No. 13-cv-5438, 2014 WL 2565824, at *7 (E.D.N.Y. June 9, 2014). As a servicer and an agent, Omaha is an intended third-party beneficiary of the Sandpoint Agreement and may compel Plaintiffs to arbitrate their claims "arising from or relating to [Mr. Labajo's] application for [the January 27, 2012] loan, regarding this loan, . . . [or] regarding the matters subject to arbitration . . . ." (Summa Decl. Ex. A at 9.)

As to the question of whether Plaintiffs' claims in the Complaint constitute "claim[s] arising from or relating to" Mr. Labajo's loan application, or "regarding this loan," the Court finds the Complaint arose directly from Omaha's agency/servicer relationship with Sandpoint in connection with Mr. Labajo's loan. The Complaint alleges that Omaha "actively participate[d]" in an unlawful scheme with Sandpoint (Compl. ¶ 10), knew that loans issued by Sandpoint and other lenders were "illegal and unenforceable in California . . . and still originated ACH debit entries into California" (id. ¶ 167), agreed with Sandpoint and other lenders to faciliate illegal payday loans (id. ¶ 171-72), "repeatedly and knowingly aided and abetted [Sandpoint's] violations of California usury laws by causing to be collected usurious interest payments" whose terms were established by the Sandpoint Agreement (id. ¶ 177), and "violate[d] California's usury laws" by "conspiring with and aiding and abetting" Sandpoint to "charge illegal, usurious, and unconscionable fees" set by the Sandpoint Agreement (id. ¶ 187). Thus, Plaintiffs' claims against Omaha arise from and relate to its role in processing disbursement and repayment of "illegal, usurious, and unconscionable fees" on Mr. Labajo's loan, as set in the Sandpoint Agreement. (Id.) See Clerk v. First Bank of Del., 735 F. Supp. 2d 170, 188 (E.D. Pa. 2010) (claims premised on a challenge to the interest rate in a loan "relate directly to [the] Loan Agreement" and thus fall within the scope of an agreement to arbitrate claims

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

"arising from or relating directly or indirectly to the Loan Agreement"); see also, e.g., Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 636 (4th Cir. 2002) (same); Mori v. East Side Lenders, LLC, No. 11 Civ. 1324, 2011 WL 2518966, at *4 (N.D. Ill. June 24, 2011) (same).

Accordingly, the Court finds Omaha, as a third-party beneficiary of the Sandpoint Provision and an agent of Sandpoint, may enforce the Sandpoint Provision against Plaintiffs, and the Sandpoint Provision encompasses the disputes at issue in this action.

**(b) MNE/SFS Agreements**

In Mr. Labajo's and Ms. Labajo's loan agreements with MNE and SFS, respectively, the MNE/SFS Provision expressly provides that claims asserted against any of MNE's and SFS's "agents, consultants, or servicers and/or any of their employees, directors, officers, shareholders, managers, members, parents, subsidiaries, or any affiliated entities (hereinafter collectively referred to as "related third parties")" may enforce arbitration against Plaintiffs. (Dempsey Decl. Ex. 9 at 36; Ex. 10 at 53.) The MNE/SFS Agreements, after defining "We" or "Us" as MNE and SFS, respectively, and their "directors, officers, employees, authorized representatives, agents and successors in interest acting within the scope of their authority," indicate that Plaintiffs "authorize Us to automatically initiate one or more ACH debit entries to your Account to pay your Payment Due on the Payment Date as detailed in the Repayment Schedule in your Loan Agreement." (Id. Ex. 9 at 34, 38; Ex. 10 at 51, 55.) As Plaintiffs allege, "[o]n or about June 28, 2013, [MNE] 'initiated' a debit transaction of $240.00 for Plaintiffs' joint checking account in California through the ACH Network. First International, pursuant to its written contract with [MNE], . . . then 'originated' that debit entry into the ACH Network where it was received by Plaintiffs' bank and debited from Plaintiffs' joint checking account." (Compl. ¶ 127.) Similarly, as Plaintiffs allege, "[o]n or about July 19, 2013, [SFS] 'initiated' a debit transaction of $180.00 for Plaintiffs' joint checking account in California through the ACH Network. . . . First International, pursuant to its written contract with [SFS], . . . then 'originated' that debit entry into the ACH Network where it was received by Plaintiffs' bank and debited from Plaintiffs' joint checking account." (Compl. ¶ 122.) The Court finds First International, as the entity that originated the ACH debit entries on behalf of and upon initiation by MNE and

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

SFS, clearly and unmistakably qualifies as an agent and a servicer contemplated by the MNE Agreemant and the SFS Agreement and a third-party beneficiary that the signatories to the MNE/SFS Provision intended to benefit.  See Garcia, 1998 WL 118177, at *4; see also Momot, 652 F.3d at 988-89 (requiring clear and unmistakable evidence of the parties' intent to delegate issues to an arbitrator); Brinton, 76 Cal. App. 4th at 558 (a third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears from the terms of the agreement).

As Omaha does, First International points out in its Reply that Plaintiffs impermissibly seek to employ a definition of "servicer" found under the RESPA (and adopted by TILA) to argue that First International did not function as a "servicer" for MNE and SFS.  (First Int'l Reply at 5-6 n.5 (citing Opp'n to FIM at 1, 6).)  The MNE/SFS Agreements bear no indication that MNE and SFS intend to adopt RESPA's specialized definition of "servicer."  In the absence of such an intent, "the ordinary meaning of the term 'servicer' encompasses the services provided by" First International, which "serviced" Plaintiffs' accounts with MNE and SFS when First International initiated ACH debit entries on June 28, 2013 and July 19, 2013 in order to collect on behalf of MNE and SFS.  (Id.)  See Hornicek, 2011 WL 2623274, at *3.  As First International acted as a servicer "on behalf of," "at the request of," and upon authorization by, and, as the Complaint alleges, in active and knowing participation as a coconspirator with MNE and SFS, the Court finds First International was in an agency relationship with MNE and SFS, the Court finds First International also was in an agency relationship with MNE and SFS – a relationship in which MNE and SFS clearly controlled First International's actions as to the debiting of Plaintiffs' bank account.  (See Compl. ¶¶ 6-11, 122, 127, 141-57.)  See also Laster, 2013 WL 4082682, at *5; Reddam, 2004 WL 3761875, at *4.  MNE and SFS, as servicers and agents, "performed a crucial function with respect to the loans, which was referred to in the authorizations for funds transfers."  See Moss, 2014 WL 2565824, at *7.  As a servicer and an agent, First International may compel Plaintiffs to arbitrate their claims "relating to the interpretation, applicability, enforceability or formation of [the MNE Agreement or the SFS Agreement], . . . all federal or state law claims arising from or relating directly or indirectly to [the MNE Agreement or the SFS Agreement], . . . [and] all claims asserted by [Plaintiffs] individually against [MNE or SFS], and/or

any of [MNE's or SFS's] agents, consultants, or servicers . . . ."  (Dempsey Decl. Ex. 9 at 36; Ex. 10 at 53.)

As the Court concluded above as to Omaha, the Court finds the Complaint arose directly from First International's work for MNE and SFS in connection with Plaintiffs' loans.  The Complaint alleges that First International "actively participate[d]" in an unlawful scheme with MNE and SFS (Compl. ¶ 10), knew that loans issued by MNE and SFS and other lenders were "illegal and unenforceable in California . . . and still originated ACH debit entries into California" (id. ¶ 150), "repeatedly and knowingly aided and abetted [MNE's and SFS's] violations of California usury laws by causing to be collected usurious interest payments" established by the MNE/SFS Agreements (Compl. ¶ 177), and "violate[d] California's usury laws" by "conspiring with and aiding and abetting" MNE and SFS to "charge illegal, usurious, and unconscionable fees" set by the MNE/SFS Agreements (id. ¶ 187).  Thus, Plaintiffs' claims against First International arise from and relate to its role in processing repayment of "illegal, usurious, and unconscionable fees" on Plaintiffs' loans, as set in the MNE/SFS Agreements.  (Id.)

Accordingly, the Court finds First International, as a third-party beneficiary of the MNE/SFS Agreements and an agent of MNE and SFS, may enforce the MNE/SFS Provision against Plaintiffs, and the MNE/SFS Provision encompasses the disputes at issue in this action.

### (4) Equitable Estoppel and Unclean Hands

As noted above, the parties also advance arguments on the applicability of the equitable estoppel doctrine.  "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks and citation omitted).  Where there is an absence of clear and unmistakable evidence that a signatory party agreed to arbitrate arbitrability with nonsignatories, the equitable estoppel analysis determines whether a nonsignatory may compel a signatory to arbitrate its claims against the nonsignatory. Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1046 (9th Cir. 2009).

Because the Court finds clear and unmistakable evidence in the Agreements

EDCV 13-01861-VAP (DTBx)
CHRISTINA AND JOHN LABAJO, ET AL. v. FIRST INTERNATIONAL BANK & TRUST, AND MUTUAL OF OMAHA BANK
MINUTE ORDER of July 9, 2014

that Defendants are third-party beneficiaries of the Agreements and are agents of Sandpoint, MNE, and SFS, the Court does not find it necessary to engage in an equitable estoppel analysis.

Plaintiffs also assert an "unclean hands" argument in their Oppositions to the Motions. The Court, however, finds the argument go to the merits of the case, requiring the Court make determinations on the legality and culpability of Defendants' conduct. As such, the Court declines to decide on the "unclean hands" argument and defers to the arbitrators to determine the issue.

### (5) Summary

In sum, the Court finds the Arbitration Provisions to be valid arbitration agreements, while declining to rule on the issue of the legality or validity of the Agreements. The Court finds Defendants are third-party beneficiaries and agents of the lenders under the Arbitration Provisions. As such, Defendants may enforce the Arbitration Provisions against Plaintiffs on claims arising from or relating to the Agreements. The Court finds Plaintiffs' claims arise from and relate to the Agreements. The Court thus finds Defendants may compel Plaintiffs to arbitrate their claims against Defendants in this action.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motions to Compel Arbitration (Doc. Nos. 25, 26), filed by Defendants Mutual of Omaha Bank and First International Bank and Trust. The Court STAYS this action pending the outcome of the arbitrations.