**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTINA ACHEY, on Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BMO HARRIS BANK, N.A., <br><br> Defendant. | Case No. 13 C 7675 <br><br> Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christina Achey ("Achey") brings this putative class action on behalf of herself and other similarly situated individuals, alleging that Defendant BMO Harris Bank, N.A. ("BMO") assisted various online payday lenders in the collection of debts in states where payday loans are illegal. Achey asserts claims for violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) & (d), assumpsit, unjust enrichment, and aiding and abetting under Pennsylvania state lending and usury laws. BMO has moved to compel Achey to arbitrate her claims in accordance with the arbitration provision contained within the loan agreements she signed. For the reasons stated herein, the Court finds that Achey's claims against BMO fall within the scope of that arbitration provision.

## I. BACKGROUND

A payday loan is a small, unsecured short-term loan that ordinarily becomes due on the borrower's next payday. Typically, these loans feature exceptionally steep interest rates that often translate to more than 400% annually. Many states have taken steps to eliminate payday lending, either by outlawing the practice entirely or by limiting the feasibility of such loans by imposing strict interest rate caps on lenders. In an effort to circumvent these bans, some payday lenders have moved their operations to offshore havens or Native-American reservations while continuing to offer payday loans via the internet to consumers in states where such loans are illegal.

To facilitate the transfer of loan proceeds to customers' bank accounts and the debiting of their accounts for amounts due at the conclusion of the loan term, online payday lenders rely on Originating Depository Financial Institutions ("ODFIs"), which are banks that function as middlemen between the lender and the Automatic Clearing House network ("ACH"), an electronic payment system that processes direct credit and debit transactions. Once the account holder authorizes a transaction with the lender, the ODFI bank transmits that authorization through the ACH system to the account holder's bank, which, in turn, posts the appropriate credit or debit to the customer's account.

Achey is a citizen of Pennsylvania, which is one of several states that have outlawed payday lending. On October 11, 2012, Achey applied for and received a $200 payday loan (the "2012 Loan") from MNE Services, Inc. ("MNE"), a lending entity owned by the Miami Tribe of Oklahoma that offers loans through a website called *ameriloan.com.* The following year, on July 10, 2013, Achey applied for and received an additional payday loan from MNE in the amount of $350 (the "2013 Loan"). The nominal annual interest rate for these loans was 730% and 476%, respectively.

BMO is one of several ODFI banks that originate ACH debits and credits on behalf of various lenders. According to Achey, BMO is the ODFI responsible for originating debit entries on her account in connection with her 2012 and 2013 Loans. Achey alleges that BMO was aware of the fact that it was assisting MNE in the collection of usurious or unlawful loans through its role as an ODFI on those transactions and that its conduct thus violated federal and state laws.

For both the 2012 and 2013 Loans, Achey completed an online application and signed an electronic loan agreement (collectively, the "Loan Documents"). Although Achey did not attach the Loan Documents to her complaint, BMO provided the Court with copies that it obtained from AMG Services, Inc. ("AMG"), a company that services MNE's accounts and maintains records of MNE customer loan

agreements.  (*See,* Decl. of Natalie C. Dempsey, sworn to on Dec. 23, 2013 ("Dempsey Decl."), ¶ 17 and Exs. 9-10, ECF No. 30-5).

The Loan Documents for both loans contain an arbitration provision that requires Achey to arbitrate "any dispute" concerning her loans.  The term "dispute," which the provision specifies is to be accorded its "broadest possible meaning," encompasses, among other things, (1) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of the loan agreement, including the validity and scope of the arbitration provision itself, (2) any claim, dispute, or controversy relating to the interpretation, applicability, enforceability, or formation of the loan agreement, (3) any federal or state law claims arising from or relating to the loan agreement, (4) all claims asserted against MNE or its agents, consultants, servicers, employees, directors, officers, shareholders, parents, subsidiaries, or any "affiliated parties," which the Loan Documents refer to collectively as "related third parties," and (5) all claims asserted as a representative or member of a class against MNE or any related third parties.  The provision further states in bold letters: **"YOU ARE WAIVING YOUR RIGHT TO FILE A LAWSUIT . . . AGAINST [MNE] OR RELATED THIRD PARTIES."**  (The wording of the 2012 Loan's arbitration provision differs slightly from that of the 2013 Loan, but the variance is not material).

The arbitration provision requires that all proceedings be conducted in the county of the consumer's residence and provides that any arbitration fees be reimbursed to the consumer, regardless of the outcome. The provision also allows the consumer to recover her reasonable attorneys' fees in the event that she prevails. Finally, the provision permits consumers to opt-out of arbitration by submitting a written request via e-mail within a short period of time after entering into the loan agreement. According to MNE's records, Achey did not opt out of the arbitration agreement for either the 2012 or 2013 Loans. (Dempsey Decl. ¶¶ 22-23).

At least eight other putative class actions asserting nearly identical claims against BMO have been filed in separate district courts across the country. *See, Moss v. BMO Harris Bank, N.A.,* No. 13-cv-5438 (E.D.N.Y. Sept. 30, 2013); *Graham v. BMO Harris Bank, N.A.,* No. 13-cv-1460 (D. Conn. Oct. 4, 2013); *Parm v. BMO Harris Bank, N.A.,* No. 13-cv-3326 (N.D. Ga. Oct. 4, 2013); *Dillon v. BMO Harris Bank, N.A.,* No. 13-cv-897 (M.D.N.C. Oct. 8, 2013); *Booth v. BMO Harris Bank, N.A.,* No. 13-cv-5968 (E.D. Pa. Oct. 11, 2013); *Elder v. BMO Harris Bank, N.A.,* No. 13-cv-3043 (D. Md. Oct. 11, 2013); *Gunson v. BMO Harris Bank, N.A.,* No. 13-cv-62321 (S.D. Fla. Oct. 23, 2013); *Riley v. BMO Harris Bank, N.A.,* No. 13-cv-1677 (D.D.C. Oct. 28, 2013). In each of these copycat actions, BMO has moved to compel arbitration for the same reasons it advances here. Of the six courts that have ruled on these motions,

all but one have compelled arbitration. Having considered the authorities cited by the parties together with the pleadings in this case, the Court joins the majority and finds that the Loan Documents require Achey to arbitrate her claims against BMO.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA obliges courts to stay proceedings and compel arbitration when a claim is referable to arbitration pursuant to a valid agreement to arbitrate. *Van Tassell v. United Mktg. Grp., LLC.,* 795 F. Supp. 2d 770, 786 (N.D. Ill. 2011).

A party seeking to compel arbitration must show that: (1) a written agreement to arbitrate exists, (2) the dispute at issue is within the scope of that agreement, and (3) the other party has refused to arbitrate. *Zurich American Ins. Co. v. Watts Industries, Inc.,* 417 F.3d 682, 687 (7th Cir. 2005). In determining whether the parties agreed to arbitrate their claims, courts generally "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). However, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved

in favor of arbitration." *Volt Information Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

### III. ANALYSIS

#### A. Admissibility of the Loan Documents

At the outset, there is some dispute over whether the Loan Documents submitted by BMO are properly before the Court. In evaluating motions at the pleadings stage, courts ordinarily are limited to the four corners of the complaint. Documents outside of the complaint may be considered, however, if they are referred to in the pleadings and are central to the claims at issue. *Citidel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). Although the Loan Documents were not attached to Achey's complaint, they are referred to throughout her pleadings and are integral to her claims in this action. Indeed, it is difficult to imagine how Achey could proceed without the Loan Documents, since they are the sole basis for her claim that the 2012 and 2013 Loans were usurious.

Despite their obvious significance, Achey contends that the Loan Documents should not be considered because they were "not properly authenticated and are therefore inadmissible hearsay." (Pl.'s Mem. in Opp. to BMO's Mot. to Compel ("Pl.'s Opp. Mem.") at 5, ECF No. 40). With regard to the authenticity of the Loan Documents, however, the Federal Rules of Evidence require only a threshold showing that the documents are what they are claimed to

be. FED. R. EVID. 901(a). Establishing this foundation is not rigorous; ordinarily, the showing may be made through testimony or a sworn affidavit by a witness with knowledge. *See,* FED. R. EVID. 901(b)(1). "The party offering the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Boim v. Quranic Literary Inst.,* 340 F. Supp. 2d 885, 915 (N.D. Ill. 2004).

As proof of the Loan Documents' authenticity, BMO relies upon the declaration of Natalie Dempsey, a project manager at AMG, who asserts that she has firsthand knowledge of MNE's loan agreements through her employment at AMG and that she is familiar with AMG's record-keeping systems for MNE customer account information. (Dempsey Decl. ¶¶ 1-3). Based upon her experience with MNE's customer records, Ms. Dempsey attests that the Loan Documents submitted by BMO are "true and correct" copies of Achey's 2012 and 2013 loan agreements. (*Id.* ¶¶ 18-19). Under the standards articulated by the Federal Rules, this evidence is sufficient to establish the authenticity of the Loan Documents. Indeed, just last month, a comparable declaration tendered by Ms. Dempsey was approved to authenticate similar loan agreements in a related payday lending case. *See, Labajo v. First Int'l Bank & Trust,* No. 5:14-cv-627-VAP-DTB (C.D. Cal. July 9, 2014) (order in chambers, ECF No. 33).

As for Achey's contention that the Loan Documents are hearsay, they plainly are admissible pursuant to the business records exception set forth in Rule 803(6) of the Federal Rules of Evidence. A document containing otherwise inadmissible hearsay may be admitted as a business record upon a showing that such records "are kept in the course of regularly conducted business activity, and that it was the regular practice of that business activity to make records, as shown by the testimony of the custodian or otherwise qualified witness." *Collins v. Kibort,* 143 F.3d 331, 337 (7th Cir. 1998) (internal quotation marks and brackets omitted). Ms. Dempsey's declaration confirms that AMG, as MNE's servicing company, maintains customer loan agreements "in its ordinary course of business." (Dempsey Decl. ¶ 17). Ms. Dempsey is competent to supply this foundational information because she had access to and is familiar with MNE customer loan agreements through her position as a project manager at AMG. (*Id.* ¶ 3). Accordingly, the Loan Documents may be considered as business records free of any hearsay concerns.

Achey's citation to *Dillon v. BMO Harris Bank, N.A.,* No. 13-cv-897, 2014 WL 911950 (M.D.N.C. Mar. 10, 2014), the sole related payday lender case to deny BMO's motion for arbitration, does not compel a different result. In *Dillon,* the district court refused to order arbitration because BMO and certain other ODFI defendants simply submitted the plaintiff's loan documents without presenting

any evidence as to their authenticity. *Id.* at *2. The court found it significant that no witness was proffered to "affirm[] that the documents were found in the business records of the lender or otherwise establish[] the authenticity of the documents." *Id.* For that reason, the court determined that the defendants had "failed to show the existence of an agreement to arbitrate." *Id.* at *3.

In contrast to *Dillon,* there is ample evidence demonstrating the authenticity of the Loan Documents submitted in this case. Because Ms. Dempsey's sworn declaration provides a credible basis for concluding that the Loan Documents are genuine, the Court finds that BMO has established to a sufficient degree of certainty the existence of an agreement to arbitrate.

### B. Enforcement of the Arbitration Agreement

Although BMO is not a signatory to the Loan Documents, "traditional principles of state law permit an [arbitration agreement] to be enforced by or against nonparties to the [agreement] through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009) (quotation marks omitted). BMO contends that it is entitled to enforce the arbitration agreement because (1) principles of equitable estoppel bar Achey from denying BMO the right to seek arbitration, and (2) BMO is a third-party beneficiary to the arbitration agreement.

As an initial matter, there appears to be some confusion over the applicable law in this case. Although Achey seeks relief primarily under Pennsylvania law and both parties cite Pennsylvania and Third Circuit cases on the issue of the enforceability of the arbitration provision, Achey also suggests that tribal law may be relevant because the Loan Documents provide that the 2012 and 2013 Loans are governed by the laws of the Miami Tribe of Oklahoma. (*See,* Dempsey Decl., Ex. 9 at 7, Ex. 10 at 8). Oddly, however, Achey "takes no position" either way, except to point out that BMO failed to address the issue in its motion to compel. (Pl.'s Opp. Mem. at 8).

While the Loan Documents do indicate that tribal law generally governs the 2012 and 2013 Loans, the matter is somewhat unclear because the arbitration provision appears to have been exempted: the Loan Documents specify that tribal arbitration law controls only if a court first determines that the FAA does not apply. (Dempsey Decl., Ex. 9 at 8, Ex. 10 at 10). Happily, there is no need to resolve the issue, however, since Achey has not demonstrated the existence of any conflict between Pennsylvania and tribal arbitration law "such that the case could have a different outcome depending on which law is applied." *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994,* 948 F. Supp. 747, 750 (N.D. Ill. 1996); *see also, Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.,* 376 F.3d 664, 671 (7th Cir. 2004). Accordingly, the

Court applies Pennsylvania and Third Circuit law to the extent that it is not preempted by the FAA.  *See, e.g., Booth v. BMO Harris Bank, N.A.,* No. 13-5968, 2014 WL 3952945, at *4 n.4 (E.D. Pa. Aug. 11, 2014).

### *1. Equitable Estoppel*

Under Pennsylvania law, principles of equitable estoppel permit non-signatories to enforce an arbitration agreement "when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties." *Dodds v. Pulte Home Corp.,* 909 A.2d 348, 351 (Pa. Super. Ct. 2006).  In determining whether it would be inequitable to allow a party to avoid arbitration with a non-signatory, courts consider "whether there is a close relationship between the parties involved, and examine the relationship of the alleged wrongs to the non[-]signatory's obligations and duties in the contract."  *Miron v. BDO Seidman, LLP,* 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004) (internal quotation marks omitted).

Turning to the first of these inquiries, BMO's role in originating the 2012 and 2013 loan transactions demonstrates that it shared a sufficiently close relationship with Achey such that it would have been foreseeable that she would be required to arbitrate her claims against BMO.  As part of her 2012 loan agreement, Achey expressly authorized MNE's "servicer, agent, or affiliate" to initiate ACH credit and debit entries on her account.  The 2013

loan agreement omitted this "servicer, agent, or affiliate" language in favor of a defined term for MNE that included "authorized representatives" and "agents," but the meaning remains the same. The repeated references in both loan agreements to "related third parties" and the need to "initiate" entries on the ACH network clearly suggests that other entities would be required to complete various aspects of the loan transactions. Thus, by consenting to arbitrate an extremely broad and open-ended range of claims against those unidentified third parties, Achey "knowingly agreed that, in the future, [she] would have to arbitrate with a party who [was] not named in the loan documents, and having made that agreement, [Achey] cannot now deny the foreseeability of BMO's involvement" in the loan transactions. *Moss v. BMO Harris Bank, N.A.,* --- F. Supp. 2d ----, No. 13-cv-5438 (JFB)(GRB), 2014 WL 2565824, at *6 (E.D.N.Y. June 9, 2014). Accordingly, the Court finds there to be an "obvious and close nexus" between Achey and BMO. *Dodds,* 909 A.2d at 351.

The remaining estoppel consideration is whether Achey's claims in this action are sufficiently intertwined with the contract obligations underlying the 2012 and 2013 loan agreements. *See, E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 199 (3d Cir. 2001). Claims asserted against a non-signatory to an agreement are intertwined with the underlying contract where the signatory "must rely on the

terms of the agreement to assert its claims against the non[-]signatory such that the signatory's claims make reference to or presume the existence of the written agreement, or the signatory's claims arise out of and relate directly to the written agreement." *Bannett v. Hankin,* 331 F. Supp. 2d 354, 359-60 (E.D. Pa. 2004). There can be little doubt that Achey's claims arise out of her 2012 and 2013 loan agreements. Indeed, her entire case depends upon the alleged illegality of the underlying payday loans and is premised on the notion that BMO was aware that it was assisting MNE in the collection of usurious debts. The agreements setting forth the terms of those loans thus are indispensable to and intertwined with her claims against BMO.

Although Achey contends that the relief she seeks in this action does not turn on BMO's duties and obligations under the loan agreements, it is enough that her claims rely on the common allegation that the terms of those agreements were illegal. *See, Bannett,* 331 F. Supp. 2d at 360. Moreover, to the extent that Achey argues that BMO should not be permitted to invoke arbitration because it has "unclean hands" from having aided and abetted in the collection of unlawful payday loans, that is an issue for the arbitrator, rather than the Court, to decide. In *Buckeye Check Cashing, Inc. v. Cardenga,* the Supreme Court held that "unless the challenge is to the arbitration clause itself, the issue of [a] contract's validity is considered by the arbitrator in the first

instance." *Buckeye Check Cashing, Inc. v. Cardenga,* 546 U.S. 440, 445-46 (2006). Achey's unclean hands argument does not concern the arbitration provision specifically, but instead relates to BMO's actions with regard to the loan agreements in general. Consequently, Achey's argument does not affect BMO's ability to enforce the arbitration provisions. *See, In re A2P SMS Antitrust Litig.,* 972 F. Supp. 2d 465, 482 (S.D.N.Y. 2013).

At least four other courts in related payday lending actions, including one applying Pennsylvania law, have permitted BMO to enforce similar arbitration provisions through the doctrine of equitable estoppel. *Booth,* 2014 WL 3952945, at *5-7; *Riley v. BMO Harris Bank, N.A.,* No. 13-1677 (CKK), --- F. Supp. 2d ----, 2014 WL 3725341, at *5-6 (D.D.C. July 29, 2014); *Graham v. BMO Harris Bank, N.A.,* No. 13-cv-1460 (WWE) (D. Conn. July 16, 2014) (unpublished memorandum decision, ECF No. 200); *Moss,* 2014 WL 2565824, at *4-6. The Court finds no cause to depart from these well-reasoned and persuasive decisions. Accordingly, for the reasons explained, the Court concludes that Achey's claims against BMO are subject to arbitration under the terms of her loan agreements. Because BMO is entitled to enforce the arbitration provision under the doctrine of equitable estoppel, the Court need not address its related argument that it is a third-party beneficiary to the agreement.

### *2. Dismissal of Claims*

Having determined that Achey is required to arbitrate her claims against BMO, the ordinary course would be to compel arbitration and stay the case. However, the Seventh Circuit has held that a district court cannot order arbitration in a forum outside of the district in which it sits, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 327 (7th Cir. 1995), and the arbitration provision contained in the loan agreements mandates that all arbitration proceedings be conducted in the county of the consumer's residence, which in Achey's case is Lehigh County, Pennsylvania. (Compl. ¶ 11, ECF No. 1). Although the arbitration provision does allow the consumer to stipulate to a different location, there is no indication that Achey has agreed to arbitrate within the Northern District of Illinois. In these circumstances, the Court is not permitted to compel arbitration and, instead, dismissal of the action is appropriate. *Continental Cas. Co. v. Am. Nat. Ins. Co.,* 417 F.3d 727, 735 (7th Cir. 2005).

### IV. CONCLUSION

For the reasons stated herein, the Court finds that Achey's claims against BMO are subject to arbitration under the doctrine of equitable estoppel.

However, because the arbitration clause requires that arbitration take place in the county of Achey's residence, which is outside of the Northern District of Illinois, the Court cannot

order arbitration of her claims.  Consequently, BMO's motion to compel arbitration, (ECF No. 27), and all other pending motions, (ECF Nos. 24 and 31) are denied.  The action is dismissed without prejudice.

**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

Date:8/19/2014